HERMAN CLIFFORD VANDEGRIFF, alias Herman Clifford Vandergriff, Plaintiff in Error,

v.

STATE OF TENNESSEE, Defendant in Error.

409 S.W.2d 370.

(*Knoxville,* September Term, 1966.)

Opinion filed November 14, 1966.

Roy A. Scruggs, Chattanooga, for plaintiff in error.

George F. McCanless, Attorney General, Edgar P. Calhoun, Assistant Attorney General, Nashville, for defendant in error; and Edward E. Davis, District Attorney General, Chattanooga, prosecuted case for State in the trial court.

Mr. Justice Creason delivered the opinion of the Court.

This appeal comes from the Criminal Court of Hamilton County, Tennessee. The parties will be referred to

herein as they appeared in the trial court; that is, plaintiff in error Herman Clifford Vandegriff as the defendant, and defendant in error as the State.

On February 16, 1966, the defendant was indicted for unlawfully, feloniously, willfully, deliberately and maliciousy murdering one Linda Gail Tinker and one Nancy Bloodworth by voluntarily being in a drunken condition from intoxicating beverages and knowingly driving an automobile at a dangerous, reckless and unlawful speed, and in a grossly negligent manner and in willful and wanton disregard of other persons or property, and knowing that the same was perilous to the life, limb and property of other persons. A second count of the indictment charged the defendant with driving while intoxicated. On April 22, 1966, the defendant was tried for the charges contained in the aforementioned indictment. A jury found the defendant guilty, under the first count, of involuntary manslaughter and fixed his punishment at not more than five years in the State penitentiary. The trial court entered judgment sentencing the defendant to a term of not less than one year nor more than five years in the State penitentiary. The defendant timely filed a motion for new trial, which was overruled on May 9, 1966. Appeal has been perfected to this Court.

The assignments of error filed on behalf of the defendant in this Court are as follows:

"It was error:

1. For the Trial Court to allow witness H. E. Baker to testify as to any conversation between him and Carl Bray that took place in the emergency room at Erlanger Hospital. Such testimony was hearsay and not admis-

sible. Although this testimony was made in the physical presence of the defendant, his condition was such that he could not comprehend the meaning of such conversation, if in fact he heard it.

2. For the Trial Court to allow witness H. E. Baker to testify as to statements allegedly made to him by the defendant while the defendant was in the emergency room at Erlanger Hospital. The introduction of this testimony over the defendant's objections violated the defendant's constitutional right against self-incrimination and his right of due process. Defendant was in no physical condition to voluntarily waive any of his constitutional rights at this time and the introduction in evidence of Baker's testimony was prejudicial to defendant.

3. For the Trial Court to overrule defendant's motion for a new trial because the evidence is insufficient to support the verdict in that there is no testimony in the record which shows that the two girls found at the scene of the accident are the same two who were later pronounced dead at Erlanger Hospital, except that they have the same names.''

The Court finds it necessary to consider only defendant's assignment of error 2.

This assignment of error asserts that the trial court erred in allowing Police Officer H. E. Baker to testify as to statements allegedly made by the defendant to him while the defendant was in the Emergency Room at the Erlanger Hospital. It is urged that the admission of this testimony violated defendant's constitutional right not to make any statements that might incriminate him, and his constitutional right to due process.

The record in this case reveals that the statements of the defendant testified to by Officer Baker were allegedly made shortly after the defendant's arrival at the Emergency Room at the Erlanger Hospital. According to Officer Baker's testimony, shortly prior to the time these statements were taken, Officer Baker had answered a call to a point on Riverside Drive, in Chattanooga, Tennessee. This was at 2:34 A.M., on the 16th of November, 1965. When he arrived at the scene of the accident to which he was called, an officer, Lee Mosley, was already on the scene. At the scene of the accident, he found two white females, both of whom he believed to be dead. One of these females was outside the wrecked automobile; the other was on the passenger side of the front seat.

He found the defendant lying unconscious in the front seat of the wrecked automobile. The defendant was in or near to what is commonly referred to as the driver's seat of the automobile. Also on the scene was a Mr. Bray, a passenger, who was standing outside the automobile at the time Officer Baker arrived. The defendant and the two white females, identified as Linda Gail Tinker and Nancy Bloodworth, were sent to Erlanger Hospital, by ambulance. It was almost immediately after the defendant's arrival at the hospital that the statements admitted into evidence were taken from him. The defendant testified that he did not fully regain consciousness until after he had been sent from the Emergency Room to the Intensive Care Ward. A Dr. James L. Holcomb, who treated the defendant in the Emergency Room, testified that the defendant appeared sleepy and groggy at the time of his arrival at the hospital. He further testified that X-rays revealed that the defendant had suffered a line fracture of his skull on the right side,

a fractured nose, a fractured bone in his face, and a fracture of the flora of the eye socket. A final diagnosis as to the condition of the defendant, made by another doctor, was that the defendant had also suffered a brain concussion.

At the time the State sought to introduce testimony concerning the statements made by the defendant to Officer Baker, objection was made by the defendant's counsel on the basis that such would infringe upon the defendant's constitutional rights. The trial court overruled defendant's counsel's objection and admitted Baker's testimony as to the statements made by the defendant. No evidentiary hearing was had on the admissibility of this testimony, but the facts heretofore related were brought out during defendant's proof.

██ The State, in its brief filed in this Court, contends that these statements were admissible because they were not the result of custodial interrogation, such as that present in the cases of *Escobedo v. State of Illinois* (1964) 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, and *Miranda v. State of Arizona* (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. With this contention of the State, this Court does not agree. The following quotation is taken from *Escobedo v. State of Illinois,* supra.

"We hold only that when the process shifts from investigatory to accusatory—when its focus is on the accused and its purpose is to elicit a confession—our adversary system begins to operate, and, under the circumstances here, the accused must be permitted to consult with his lawyer."

We take this statement to mean that once the process shifts from investigatory to accusatory, the constitu-

tional rights of the defendant come into play. It is clear from the record in the case before us that at the time these statements were elicited from the defendant, the investigatory process had focused upon the defendant and become, at this point, accusatory. The defendant had been found in the automobile in the position closest to that normally occupied by the driver. It was determined that the other male occupant of the car, Bray, could not have exited from the door on the driver's side, as it was so damaged that it could not be opened. It further appears in this record that within a period of an hour, or shortly more, after this questioning, Officer Baker further requested the defendant to submit himself to a drunkometer test. Thus, it may justly be said that accusatory attention had become focused upon the defendant.

█ Once it is established that the admissions of the defendant were made after the law enforcement process had shifted from investigatory to accusatory, there remains a question of whether or not the admissions were voluntarily made. In the case presently before this Court, it is apparent that the defendant was in a dazed condition and suffering from severe injuries. There is also evidence in this record that at the time the defendant made these admissions, he was under the influence of alcohol. The United States Supreme Court, in the case of *Townsend v. Sain* (1963) 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770, had under consideration an admission made by a defendant while under the influence of a drug administered to him by a doctor. No police officer took part in the administration of this drug. The police officer did, however, do the questioning after the drug was administered. The United States Supreme Court said the following, regarding the admissibility of such a statement:

"Numerous decisions of this Court have established the standards governing the admissibility of confessions into evidence. If an individual's 'will was overborne' or if his confession was not 'the product of a rational intellect and a free will,' his confession is inadmissible because coerced. These standards are applicable whether a confession is the product of physical intimidation or psychological pressure and, of course, are equally applicable to a drug-induced statement. It is difficult to imagine a situation in which a confession would be less the product of a free intellect, less voluntary, than when brought about by a drug having the effect of a 'truth serum.' It is not significant that the drug may have been administered and the questions asked by persons unfamiliar with hyoscine's properties as a 'truth serum,' if these properties exist. Any questioning by police officers which *in fact* produces a confession which is not the product of a free intellect renders that confession inadmissible."

We think the facts of the case presently before this Court present an analogous situation. It cannot be doubted, on this record, that at the time of these inculpatory statements, the defendant had, in substantial part at least, been shorn of his volition. His statement could not have been "the product of a free intellect".

■ Further, the record in this case reveals that prior to the questioning, the defendant was not advised of his constitutional right to remain silent, to have counsel, or that any statements made by him might be used against him. It is also doubtful that the defendant, in the condition which this record shows he was in, would have been capable of voluntarily waiving these rights and making a free and voluntary statement, even had he been

advised of these rights. It is the opinion of this Court that the defendant's assignment of error is well taken.

The judgment of the trial court is reversed and the case remanded for a new trial.

BURNETT, CHIEF JUSTICE, DYER and CHATTIN, JUSTICES, and HARBISON, SPECIAL JUSTICE, concur.