**STATE of Tennessee, Appellant,**

v.

**Barton NAKDIMEN, Appellee.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Jan. 26, 1987.

W.J. Michael Cody, Atty. Gen. & Reporter, Gordon W. Smith, Asst. Atty. Gen., Nashville, David G. Dake, David C. Jennings, Asst. Dist. Attys. Gen., Knoxville, for appellant.

Raymond A. Shirley, Jr., Knoxville, for appellee.

OPINION

ARTHUR C. FAQUIN, Jr., Special Judge.

Pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure, the State appeals. The sole issue before this Court is whether the trial court erred in granting the defendant's motion to suppress self-incriminating statements made by him to a police officer, in the absence of his attorney, after he had been advised of his *Miranda* rights, had refused to waive those rights, and had requested that his attorney be present during his questioning.

The State argues that the court erred in granting the motion.

In support of its argument, the State contends that the constitutional requirements concerning the admissibility of incriminating statements as set forth in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), apply only when there is a "custodial interrogation,"

and since the defendant was not "in custody" at the time his statements were made, the *Miranda* requirements did not apply, and his statements should not have been suppressed.

In the *Miranda* decision, the Court determined that the Fifth and Fourteenth Amendments' prohibition against compelled self-incrimination required that "custodial interrogation" be preceded by advice to the putative defendant that he has the right to remain silent and that he also has the right to the presence of an attorney. 384 U.S., at 479, 86 S.Ct., at 1630. If the accused requests counsel, the interrogation must cease · until an attorney is present. 384 U.S., at 474, 86 S.Ct., at 1627. Once the right to have counsel present during "custodial interrogation" has been invoked by the accused, the police may not continue to question him until counsel is available, unless the accused himself initiates further communication, exchanges, or conversations with the police. *Edwards v. Arizona,* 451 U.S. 477, 484–485, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981).

Whether or not a suspect has been subjected to "custodial interrogation" requiring *Miranda* warnings is a factual issue, and when such questions are presented to the trial court for determination, each case must be controlled by its own facts, and all of the circumstances must be taken into consideration by the judge in making his decision. *See State v. Morris,* 224 Tenn. 437, 443, 456 S.W.2d 840, 842 (1970); *Childs v. State,* 584 S.W.2d 783, 788 (Tenn. 1979). Certain rules, which have been laid down for the use of the trial judge in determining these questions, are set forth in the *Morris* and *Childs* decisions, *supra,* under the following general headings:

1. The nature of the interrogator.
2. The nature of the suspect.
3. The time and place of the interrogation.
4. The nature of the interrogation.
5. The progress of the investigation at the time of the interrogation.

224 Tenn., at 443, 456 S.W.2d, at 842; and 584 S.W.2d, at 788.

In the case *sub judice,* the trial judge, in suppressing the defendant's complained-of statements, considered the "totality of the circumstances" and applied these rules in making his decision.

The evidence upon which the trial judge based his ruling was adduced at the defendant Nakdimen's suppression hearing and revealed the following:

Henry Wood, a detective with the Knox County Sheriff's Department, began investigating the defendant Nakdimen for the alleged sexual abuse of his (the defendant's) daughter as a result of a telephone call from the district attorney general's office on November 28, 1984.

On that same day, as part of his investigation, Wood contacted Thelma Schroyer, of the Department of Human Services, who expressed to him the belief that the defendant, Barton Nakdimen, was responsible for the sexual abuse of this child.

On the next day, Wood contacted Nakdimen, who was the only suspect at the time. Before he contacted him, however, Wood's investigation was primarily focused on Nakdimen as the perpetrator of the alleged offense, and based upon the information that he possessed at that time, Wood felt that it was very critical to the prosecution of the case to obtain a statement from Nakdimen. In fact, Wood felt that it was necessary for one to be obtained from him before he could proceed on to the grand jury. So, using information that he received from Ms. Schroyer, Wood telephoned the defendant and asked him to come in for an interview.

According to the defendant, Detective Wood telephoned him twice on the morning of November 29, 1984, and insisted that he come to the detective's office before noon of that same day. Although he followed the detective's instructions, the defendant's testimony indicated that he went to the Sheriff's Office only because he thought it was required by the authorities, and he felt he had no choice.

Upon the defendant's arrival at the Sheriff's Office on the morning he received the calls from Wood, he was escorted by Wood to a small, windowless interrogation room.

His wife, who had accompanied him to the Sheriff's Office, was not permitted to go with them to the room or to be present when he was interviewed. She was required to remain at the front of the office, seated where the secretaries sat.

Before the interview began, Wood read the *Miranda* rights to the defendant and determined that he understood them. However, when Wood asked him if he would sign a waiver of these rights and give him a statement, he refused, stating that his attorney had advised him by telephone, earlier that morning, not to sign anything or provide information beyond his name, address, and telephone number.

When the defendant indicated to Wood that he wanted his lawyer present, Wood escorted him from the interrogation room to his desk in another room. From there, Wood telephoned the defendant's attorney and told him that he "had his client in" his office and wanted to interview him, but that his client refused to talk to him. Wood also advised the attorney of the alleged offense and asked him to come down for the interview, which, apparently, had been arranged upon short notice. Because the attorney was engaged with another client at that moment, it was agreed that he and the defendant would meet with the detective on the following afternoon for an interview. However, the attorney indicated to Wood that the defendant would only give information concerning his name, address, phone number, social security number, etc.

At this point, the testimony becomes controverted.

According to the defendant's testimony, he presumed that his attorney was coming down at that time, and he was not told that Wood and his attorney had set up an appointment for an interview for the next day. After Wood had completed the telephone conversation with his attorney, the defendant asked Wood whether he could leave at that time. Wood told him, "no," that he wanted him to go back into the interrogation room and sit down and he wanted to talk to him "a minute more." Returning then to the interrogation room with Wood, the defendant sat down, as Wood had directed him to do, and he was questioned by Wood, behind closed doors, without further *Miranda* warnings and without benefit of counsel, for an additional hour and ten minutes. The questioning was initially directed at the defendant's personal interests, however, questions were interposed which were designed to subtly elicit incriminating information from the defendant.

Detective Wood, on the other hand, gave a different version of what took place after his telephone conversation with the defendant's attorney. However, his testimony concerning his version was explicitly discredited by the trial court's findings.

According to Wood's version, when he had finished talking with Nakdimen's attorney, he informed Nakdimen what the attorney had told him and advised him of the new date of the interview, and then he returned to the interrogation room to get his files. To his surprise, Nakdimen, who had not been placed under arrest and was free to go at any time he wished, voluntarily followed him, without being asked, to that room and suddenly became very talkative.

Although Wood denied that he initiated this conversation or that he initiated any new subject matter into it, he admitted asking questions calling for explanations, and he admitted that the purpose of these questions was to elicit information and responses from the defendant. He also admitted that his investigation was primarily focused on the defendant as the perpetrator of the crime and that the defendant was the lone suspect in the case. In addition, he admitted that when he decided that enough had been said and that it was safe to terminate the conversation he terminated it, knowing at that point that the damage had been done to the defendant's case. It was at this time that he advised the defendant that he was free to go and that he did not need to talk to him the next day.

After the defendant had been permitted to leave Wood's office, Wood contacted a member of the district attorney general's office and set up an appointment to meet

with members of that office and Ms. Schroyer later that same day. When he explained what had happened earlier that morning, he was advised, "We've got a case." Later, on December 12, 1984, the defendant was arrested.

Although there is no indication in the record that the defendant was under formal arrest when he made the incriminating statements, neither is there any evidence, other than the discredited testimony of Detective Wood, that the defendant was free to leave before he made the statements. Nor is there any evidence in the record indicating that before he made the statements the defendant was ever told that he was not under arrest or that he was free to leave whenever he wished.

The trial judge, in granting the defendant's motion to suppress his statements, found that the defendant was deprived of his freedom of action in a significant way; that he was treated for the purposes of this questioning, exactly the same way most people are who have been placed under formal arrest; and that, contrary to the testimony of Detective Wood, the questioning of the defendant was custodial in nature, was initiated by Wood, and was in violation of the defendant's *Miranda* rights.

On appeal, the trial judge's determination, with regard to the voluntariness of statements made by the defendant during custodial interrogation and the compliance by the police with the *Miranda* mandate, is conclusive, unless the appellate court finds that the evidence touching those matters preponderates against the trial judge's findings. *Braziel v. State*, 529 S.W.2d 501, 506 (Tenn.Crim.App.1975).

And since the trial court sees and hears the witnesses and is in a superior position to that of the appellate courts in determining their credibility, the trial judge should be permitted wide latitude of discretion in applying rules for determination of whether a suspect was subjected to "custodial interrogation" requiring *Miranda* warnings, and unless it clearly appears that such discretion has been abused and the defendant's rights infringed upon, appel-late courts will not intervene. *See Childs v. State, supra,* at 788; *State v. Morris, supra,* at 843.

We are of the opinion that the evidence concerning the voluntariness of the defendant's statements and the compliance by the police with the *Miranda* mandate does not preponderate against the trial judge's findings and that the judge's discretion in determining that the defendant was subjected to "custodial interrogation" requiring *Miranda* warnings was not abused.

"Custodial interrogation" was held by the Court in the *Miranda* decision to mean "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." 384 U.S., at 444, 86 S.Ct., at 1612. In *Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977), the Court held that *"Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.'" And in *California v. Beheler*, 463 U.S. 1121, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983), it was held that the ultimate inquiry in determining whether a person is "in custody" for purposes of receiving *Miranda* protection is "simply whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest."

■ In the present case, the circumstances surrounding the defendant's questioning convey a custodial restraint. The evidence, as accredited by the trial judge, indicates that the defendant was detained at the sheriff's office after he had invoked his constitutional rights to remain silent and to have his attorney present, even after he had requested and had been denied permission of Detective Wood to leave, until the detective had elicited the desired incriminating statements from him by surreptitious means. The evidence further shows that the defendant was the lone suspect in this matter, and Detective Wood's investigation was primarily concentrated on him as the perpetrator of the alleged offense, with Wood's sole intent being to elicit incriminating statements

from him; thus the focus of his questioning was truly accusatorial.

When the process shifts from the investigatory stage to the accusatory stage, the constitutional rights of the defendant come into play, and he must be apprised of his rights. *See State v. Morris, supra; Vandegriff v. State,* 219 Tenn. 302, 409 S.W.2d 370, 373 (1966).

 Although Detective Wood alleges that the defendant became talkative of his own volition, the trial court found that the defendant's remarks were clearly the result of Wood's manipulation. Once a defendant's right to counsel has been invoked, the police may not continue to question the accused until counsel is available, unless the accused himself initiates further communication, exchanges, or conversations with the police. *Edwards v. Arizona, supra.*

We find, therefore, that the evidence preponderates against the State. The defendant was subjected to "custodial" questioning wherein there was a restraint of freedom of movement of the degree associated with formal arrest which resulted in inculpatory statements being elicited in violation of the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution.

This issue is without merit and the Rule 9 application by the State is denied. Accordingly, the judgment of the trial court suppressing the statements of the appellee is affirmed.

DWYER and TATUM, JJ., concur.