**STATE of Tennessee, Appellant,**

v.

**William L. COOPER, also known as Billy Cooper, Appellee.**

Court of Criminal Appeals of Tennessee, at Jackson.

May 17, 1995.

Permission to Appeal Denied by Supreme Court Dec. 4, 1995.

Charles W. Burson, Attorney General & Reporter, Nashville, Cecil H. Ross, Assistant Attorney General, Nashville, James D. Woodall, District Attorney General, Jackson, James W. Thompson, Assistant District Attorney General, Jackson, for Appellant.

George Morton Googe, District Public Defender, Jackson (Appeal Only), Jack S. Hinson, Lexington (Trial Only), for Appellee.

## OPINION

JONES, Judge.

The sole issue presented by this interlocutory appeal is the admissibility of a statement given by the appellee, William L. Cooper, also known as Billy Cooper.[1] The trial court suppressed the statement because Cooper was not given the *Miranda*[2] warnings before he was questioned by a criminal investigator with the office of the District Attorney General. The state contends that the failure to give the *Miranda* warnings did not taint Cooper's statement because he was not in custody when he was questioned by the investigator.

The judgment of the trial court is reversed and this case is remanded to the trial court for further proceedings. This Court concludes that the criminal investigator was not required to give Cooper the *Miranda* warnings before commencing the interview because he was not "in custody." Thus, the trial court should not have suppressed the statement.

The Department of Human Services advised the office of the District Attorney General for the Twenty–Sixth Judicial District that T.H.,[3] a child under the age of thirteen, had been sexually abused by Cooper. An investigation was commenced. The matter was assigned to Jack Wilson, a criminal in-

---

1. This opinion is captioned "State of Tennessee v. William L. Cooper, also known as Billy Cooper." This is the way the appellee's name appears in the indictment. It is the policy of this Court to caption the opinion the same way the accused's name appears in the indictment.

The parties have captioned their respective briefs "State of Tennessee v. William L. Cooper." The transcript of the evidence is captioned "State of Tennessee v. William Cooper." The pleadings contained in the technical record do not have a uniform caption. The various pleadings random-

ly contain all three captions mentioned hereinabove. However, all of the captions refer to the same person named in the indictment and appearing as the appellee in this Court.

2. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

3. It is the policy of this Court not to use the name of a minor who is alleged to have been the victim of sexual abuse.

vestigator employed by the District Attorney General.

On December 21, 1992, Wilson went to Cooper's home to talk to him. Cooper was not at home. Wilson left his business card with a note asking Cooper to call him. That evening, Cooper's mother called Wilson and made an appointment for Cooper to go to the District Attorney General's office the following morning. Cooper appeared for the interview on the morning of December 22nd. Before the interview commenced, Wilson told Cooper:

> We're making you aware of a referral that was turned in to the Department of Human Services from a child by the name of [T.H.] regarding what we described as digital penetration and she's been to the doctor, Dr. Rogers here in Jackson, and we have evidence that in fact this child was touched. Now as I told you briefly when you first came in, that you are not under arrest and you're going to tell me whatever you want to tell me and no matter what you tell me, you're going to be able to leave, but there is a good possibility that with the evidence we have, this very well may be presented to the Grand Jury for a criminal indictment. If you choose to talk to us about it, then I think it might be wise for us to look at some type of counseling, some type of treatment if you want to call it treatment, for you regarding children of this age. So if you want to, just go ahead and tell me what took place two or three months ago and then again this is a twelve year old child trying to remember when this took place, we're not going to lock you in to two or three months....

The interview that followed lasted twelve minutes. Cooper answered the questions Wilson asked. He admitted that part of the allegations made by the victim were true, but he denied doing other acts that the victim had related to a medical doctor. Cooper attempted to cast his admissions in a light most favorable to him. When the interview was completed, Cooper left the office.

The Henderson County Grand Jury returned a two count indictment against Cooper on February 1, 1993. The first count alleges that he digitally penetrated the victim. The second count of the indictment alleges that he engaged in sexual contact with the victim. The record does not indicate if Cooper was arrested prior to the return of an indictment or pursuant to a capias following the return of the indictment.

Defense counsel moved to suppress the statement Cooper gave Wilson on December 22, 1992. The motion alleges that when Wilson told Cooper that there was enough evidence to seek the return of an indictment from the grand jury, this "in the opinion of this writer shifted the process from an investigatory to accusatory." The motion also alleges that when Wilson advised Cooper that a doctor who examined the victim verified someone had touched the victim, this "amounted to illegal inducement and again shifts the type of questioning from an investigatory to accusatory," and Wilson should have advised Cooper of the *Miranda* warnings.

Before the assistant district attorney general could present all of his proof, the trial court advised him that the court was going to suppress the statement. The following colloquy occurred during the evidentiary hearing on the motion to suppress:

Q. Mr. Wilson, bringing your attention to December the 22nd, 1992, did you have the occasion to interview or take a statement from Mr. William L. Cooper?

A. Yes, sir, I did.

Q. During this time, was Mr. Cooper incarcerated or under arrest?

A. He was not. I asked him by telephone to come to the office. I went by the house on an occasion and left a business card asking him to call.

Q. So he came voluntarily?

A. Yes, sir.

Q. Now where was the meeting to take place?

A. In the District Attorney's office there at 225 Martin Luther King Drive, the state office building.

THE COURT: General Thompson, where the investigator for the District Attorney requests somebody to see them, is that voluntary?

MR. THOMPSON: Yes, sir, Your Honor.

THE COURT: All right, go ahead.

Q. After you interviewed him and took a statement from him, was he placed under arrest at that time?

A. No, sir.

Q. What was he told at the end of the conversation?

A. During the conversation, that the case could very well be presented to a later grand jury, which in fact it was.

THE COURT: Did you give him his Miranda rights?

THE WITNESS: No, sir.

Q. Did you ever discuss that—

THE COURT: General, I'm going to suppress it. He says that he didn't give him his Miranda rights and told him it could very well go to the grand jury. I think he violated his rights.

MR. THOMPSON: Yes, Your Honor, if I could just make a record.

The assistant district attorney general completed his direct examination of the witness, and defense counsel cross-examined the witness.

The trial court did not make a finding of facts at the conclusion of the evidentiary hearing. Since only Wilson testified, and the evidence is not in dispute, this Court will address the merits of the issue presented in the application for interlocutory appeal.

In *Miranda v. Arizona*, the United States Supreme Court held that the statement of an accused, "whether exculpatory or inculpatory, stemming from custodial interrogation," cannot be introduced into evidence unless the state demonstrates that "procedural safeguards" were used to protect the accused's privilege against self-incrimination.[4] *Miranda* requires that a person subjected to "custodial interrogation" must be given the following warnings: (a) he has the right to remain silent, (b) any statement he makes may be used against him, and (c) he has the right to the presence of an attorney, either retained or appointed, before and during questioning.[5] These "procedural safeguards" are commonly referred to as the *Miranda* warnings.

The United States Supreme Court limited its holding in *Miranda* to "custodial interrogations."[6] The Court defined the phrase "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."[7] A person is "in custody" within the meaning of *Miranda* if there has been "a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest."[8] The Court has refused to extend its holding in *Miranda* to non-custodial interrogations.[9]

In *Oregon v. Mathiason*,[10] law enforcement officials investigated the burglary of a residence. When the owner of the residence was asked if she suspected anyone of committing the burglary, she told the officer that the accused, who was a friend of her son and

4. 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 706 (1966).

5. 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706–707.

6. *See Stansbury v. California,* 511 U.S. ——, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994); *Minnesota v. Murphy,* 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984); *California v. Beheler,* 463 U.S. 1121, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983); *Oregon v. Mathiason,* 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977); *Beckwith v. United States,* 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976); *State v. Brown,* 836 S.W.2d 530 (Tenn.1992); *State v. House,* 743 S.W.2d 141 (Tenn.1987), *cert. denied,* 498 U.S. 912, 111 S.Ct. 284, 112 L.Ed.2d 239 (1990); *State v. Davis,* 735 S.W.2d 854 (Tenn.Crim.App.), *per. app. denied* (Tenn.1987); *State v. Stapleton,* 638 S.W.2d 850 (Tenn.Crim.App.), *per. app. denied* (Tenn.1982); *State v. Timothy Blackburn,* Henderson County No. 2, 1991 WL 50197 (Tenn.Crim.App., Jackson, April 10, 1991).

7. *Miranda,* 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706.

8. *Beheler,* 463 U.S. at 1125, 103 S.Ct. at 3520, 77 L.Ed.2d at 1279.

9. *See Beckwith v. United States,* 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976) (an accused was not entitled to the *Miranda* warnings when special agents of the Internal Revenue Service questioned him in the dining room of his home).

10. 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977).

a parolee, was the only person she "could think of." The officer made several attempts to contact the accused. Finally, the officer left his card at the accused's apartment with a note asking the accused to call him. The following day, the accused called, and he agreed to meet the officer at the station house, which was approximately two blocks from the accused's apartment. When the accused arrived, the officer advised him that he was not under arrest. He also told the accused that if "he wanted to talk to him about a burglary ... his truthfulness would possibly be considered by the district attorney or judge."[11] The officer then told the accused he "believed [the accused] was involved in the burglary and [falsely stated that the accused's] fingerprints were found at the scene."[12] The accused thought for a minute and then stated that he committed the burglary. Five minutes had elapsed between the time the accused entered the office and the time he admitted his guilt. The officer then advised the accused of the *Miranda* warnings and made an audio tape of the ensuing statement. The accused was permitted to leave the station house after the interview. Thirty minutes had expired between his arrival and his departure from the station house. In holding that the accused's initial admission could be introduced into evidence because the accused was not "in custody," the Supreme Court said:

> In the present case, ... there is no indication that the questioning took place in a context where respondent's freedom to depart was restricted in any way. He came voluntarily to the police station, where he was immediately informed that he was not under arrest. At the close of a 1/2 hour interview respondent did in fact leave the police station without hindrance. It is clear from these facts that Mathiason was not in custody "or otherwise deprived of his freedom of action in any significant way."

Such a noncustodial situation is not converted to one in which *Miranda* applies simply because a reviewing court concludes that, even in the absence of any formal arrest or restraint on freedom of movement, the questioning took place in a "coercive environment." Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer *Miranda* warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect. *Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him "in custody." It was *that* sort of coercive environment to which *Miranda* by its terms was made applicable, and to which it is limited.

The officer's false statement about having discovered Mathiason's fingerprints at the scene was found by the Supreme Court of Oregon to be another circumstance contributing to the coercive environment which makes the *Miranda* rationale applicable. Whatever relevance this fact may have to other issues in the case, it has nothing to do with whether respondent was in custody for purposes of the *Miranda* rule.[13]

In *California v. Beheler*,[14] the accused and several acquaintances attempted to steal hashish from Peggy Dean, who was selling the drug on the parking lot of a liquor store. Dean was killed by the accused's stepbrother, Danny Wilbanks, when she refused to relinquish the hashish. The accused called the police. When the officers arrived, the accused told them that Wilbanks had killed the victim, and the weapon used in the murder had been hidden in the accused's backyard. The officers found the weapon. La-

---

**11.** 429 U.S. at 493, 97 S.Ct. at 713, 50 L.Ed.2d at 718.

**12.** 429 U.S. at 493, 97. S.Ct. at 713, 50 L.Ed.2d at 718.

**13.** 429 U.S. at 495–496, 97 S.Ct. at 714, 50 L.Ed.2d at 719 (emphasis in original).

**14.** 463 U.S. 1121, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983).

ter, officers asked the accused if he would accompany them to the station house. The officers told Beheler that he was not being arrested. He discussed the murder with the officers after arriving at the station house. He was not given the *Miranda* warnings before the interview commenced. The interview lasted thirty minutes. The accused was permitted to return to his home after the interview. When the accused was arrested five days later and charged with participation in the murder, he was given the *Miranda* warnings and he gave the officers a second statement. In holding that the accused's initial admission could be introduced into evidence because the accused was not "in custody," the Supreme Court said:

> The court below believed incorrectly that *Mathiason* could be distinguished from the present case because Mathiason was not questioned by police until some 25 days after the burglary. In the present case, Beheler was interviewed shortly after the crime was committed, had been drinking earlier in the day, and was emotionally distraught. In addition, the court observed that the police had a great deal more information about Beheler before their interview than did the police in *Mathiason*, and that Mathiason was a parolee who knew that "it was incumbent upon him to cooperate with police." Finally, the court noted that our decision in *Mathiason* did not preclude a consideration of the "totality of the circumstances" in determining whether a suspect is "in custody."
>
> Although the circumstances of each case must certainly influence a determination of whether a suspect is "in custody" for purposes of receiving Miranda protection, the ultimate inquiry is simply whether there is a "formal arrest or restraint on freedom of movement" of the degree associated with a formal arrest. In the present case, the "totality of circumstances" on which the court focused primarily were that the interview took place in a station house, and that Beheler was a suspect because he had

spoken to police earlier. But we have explicitly recognized that Miranda warnings are not required "simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect." That the police knew more about Beheler before his interview than they did about Mathiason before his is irrelevant, especially because it was Beheler himself who had initiated the earlier communication with police. Moreover, the length of time that elapsed between the commission of the crime and the police interview has no relevance to the inquiry.[15]

In *Minnesota v. Murphy*,[16] the accused was placed on probation after being convicted of a sex crime. As a condition of his probation, he was required to attend a program designed to help sexual offenders. While attending the program, the accused advised a counsellor that he had raped and murdered a woman in 1974. The counsellor advised the accused's probation officer of the admission. Thereafter, the probation officer and her supervisor met to discuss whether the admission should be furnished to law enforcement officials. It was agreed that the officials should be advised of this information. However, before giving the information to the officials, the probation officer met with the accused in his office. It is undisputed that the accused was not advised of the *Miranda* warnings. When the probation officer confronted the accused with the admission that he had made, the accused admitted that he had raped and murdered a woman in 1974. The accused was subsequently tried and convicted for the murder. In holding that the statement was admissible, the United States Supreme Court held that the accused was not "in custody" when the statement was made; and therefore, *Miranda* was not applicable.[17] The Court stated: "Under the narrower standard appropriate in the *Miranda* context, it is clear that Murphy was not 'in custody' for purposes of receiving *Miranda* protection since there was no 'for-

**15.** 463 U.S. at 1124–1125, 103 S.Ct. at 3520, 77 L.Ed.2d at 1279–1280 (citations omitted).

**16.** 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984).

**17.** 465 U.S. at 430–431, 104 S.Ct. at 1144, 79 L.Ed.2d at 421 (citations omitted).

mal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." [18]

The appellate courts of this state have followed *Beheler* and *Mathiason*.[19] In *State v. Smith*, a woman and two of her sons were murdered on the evening of October 1, 1989 in Nashville. However, the bodies were not discovered until 3:00 p.m. on October 2, 1989. Smith was the estranged husband of the woman and the stepfather of the two boys. A divorce proceeding was pending. Consequently, the investigating officer wanted to talk to Smith. A detective contacted the Robertson County Sheriff's Department, the county where Smith lived. He told the sheriff's office that he was investigating a homicide that occurred in Nashville, he needed to talk to Smith to obtain background information regarding his estranged wife, and locate the couple's other twin children. A Robertson County Deputy Sheriff went to Smith's home, told Smith that the Nashville officers wanted to talk to him, and asked if Smith would accompany him to an I–24 interchange a short distance from Smith's home. He advised Smith that he was not under arrest. Smith admitted at the suppression hearing that "he knew he was not under arrest, wanted to cooperate with the officers and was not coerced in any way." When the Nashville detectives arrived, it was agreed that they would talk with Smith at the sheriff's department. The detectives did not advise Smith of the *Miranda* warnings. When Smith subsequently asked to speak with an attorney, the questioning terminated, and Smith was permitted to return to his home. Smith was not charged with the murders until November 6, 1989. The trial court found that Smith was not "in custody" when he was interviewed by the detectives, and the giving of the *Miranda* warnings was not required as a prerequisite to the interview on the evening of October 2nd. In affirming the judgment of the trial court, the Supreme Court said:

This Court is bound by the trial court's determination that the Defendant was not in custody at the time of questioning unless it "clearly appear[s] that there ha[s] been an abuse of discretion and a violation of the rights of the accused." *Childs v. State*, 584 S.W.2d 783, 788 (Tenn.1979); *State v. Furlough*, 797 S.W.2d 631, 639 (Tenn.Crim.App.1990); *State v. Nakdimen*, 735 S.W.2d 799, 802 (Tenn.Crim.App.1987). There is a "hairline of distinction" between the investigatory and the accusatory or custodial stage. *Childs v. State*, 584 S.W.2d at 788; *State v. Morris*, 234 [224] Tenn. 437, 456 S.W.2d 840, 842 (1970). Whether one is in custody turns not on whether the interrogation occurred in a "coercive environment" but on whether the accused was "deprived of his freedom of action in any significant way." *Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977). Under *California v. Beheler*, 463 U.S. 1121, 1125, 1126, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983), the ultimate inquiry to determine whether a person is "in custody" for purposes of receiving *Miranda* protection is "simply whether there is a 'formal arrest or restraint of freedom of movement' of the degree associated with a formal arrest." Under the principles of *Mathiason* and *Beheler* and the totality of circumstances test of *State v. Morris*, 456 S.W.2d at 842, the trial court did not err in refusing to suppress the Defendant's statement....[20]

In *State v. Brown*,[21] a police officer was summoned to the hospital by medical personnel. The officer was advised that the doctors who had examined the Browns' child believed the child had been the subject of physical abuse. He was also advised that the child was brain dead. The officer questioned the appellant, Mack Brown, at the hospital. The *Miranda* warnings given by the officer were technically deficient—he failed to advise Brown that if he could not afford counsel to

**18.** 465 U.S. at 430–431, 104 S.Ct. at 1144, 79 L.Ed.2d at 421 (citations omitted).

**19.** *See State v. Smith*, 868 S.W.2d 561, 569–571 (Tenn.1993), *cert. denied*, —— U.S. ——, 115 S.Ct. 417, 130 L.Ed.2d 333 (1994); *Brown*, 836 S.W.2d at 545–546; *House*, 743 S.W.2d at 147;

*Davis*, 735 S.W.2d at 855; *Stapleton*, 638 S.W.2d at 859; *Blackburn*, slip op. at 3–4.

**20.** 868 S.W.2d at 570.

**21.** 836 S.W.2d 530 (Tenn.1992).

be present while he was being questioned, an attorney would be appointed for him. Brown made a statement to the officer. Later, Brown responded to questions propounded by officers during the search of his residence. He was then taken to the station house where he was given the *Miranda* warnings. Brown waived his rights and gave the officers a statement. The trial court held that the statements made at the hospital and the apartment should be suppressed, but the statement given at the station house was admissible. In rejecting the appellant's claim that the statement made at the station house was the "fruit of the poison tree," i.e. a statement tainted by the two prior statements, the Supreme Court said:

> [T]here was no violation of *Miranda* with regard to the defendant's initial statement at the hospital.

> \*    \*    \*    \*    \*    \*

> The proof shows that when Officer Wood first questioned the defendant and his wife, he knew that hospital personnel suspected child abuse, and he knew that the victim was considered brain-dead as a result. Although the circumstances pointed to the Browns as the perpetrators of the abuse, Officer Wood testified that Mack Brown was not in custody at the time of the interview, and that there was not a sufficient basis upon which to detain or arrest him until he admitted hitting the child....

> \*    \*    \*    \*    \*    \*

> In view of the trial judge's earlier finding that the defendant was not actually "in custody" until 4:00 p.m., after the statement at the hospital was given, we conclude that the court's ruling on the admissibility of that statement was erroneous....[22]

In *State v. Timothy Blackburn*,[23] the Department of Human Services (DHS) was investigating a child sexual abuse case. DHS had received a complaint that Blackburn had sexually abused his minor daughter and two minor nieces. Blackburn was contacted by the person assigned to investigate the allegations. He agreed to meet with the investigator in the DHS offices in Jackson. When Blackburn arrived at the DHS, he was met by the DHS investigator and an investigator from the District Attorney General's office. The investigator from the District Attorney General's office advised Blackburn that he was there voluntarily, he was free to go if he desired, and he did not have to talk with them. Later, the interview terminated when Blackburn stated he thought he needed a lawyer before further discussing the allegations that he sexually abused his daughter and two nieces. Blackburn left the office. He was arrested the next week after the grand jury had indicted him for sexually abusing the three children. The trial court granted Blackburn's motion to suppress the statement that he gave to the two investigators. The state sought and was granted a Rule 9 interlocutory appeal. This Court reversed the judgment of the trial court and held that "the individuals interviewing Blackburn were not required to give the *Miranda* warnings before commencing the interview because he was not in custody."[24]

In the case at bar, Cooper argued in the trial court and argues in this Court that *Miranda* warnings are required "when the process shifts from the investigatory stage to the accusatory stage." He cites *Vandegriff v. State*[25] and *State v. Nakdimen*[26] in support of his argument.

In *Vandegriff*, the state argued that the statements made by the accused were not the product of custodial interrogation; and, as a result, the officer was not required to give the *Miranda* warnings before interviewing the accused. The Supreme Court, relying upon the language contained in *Escobedo*

---

**22.** 836 S.W.2d at 546.

**23.** Henderson County No. 2 (Tenn.Crim.App., Jackson, April 10, 1991).

**24.** *Blackburn*, Henderson County No. 2, slip op. at 2.

**25.** 219 Tenn. 302, 409 S.W.2d 370 (1966).

**26.** 735 S.W.2d 799 (Tenn.Crim.App.1987).

*v. Illinois,*[27] stated:

> We take this statement to mean that once the process shifts from investigatory to accusatory, the constitutional rights of the defendant come into play. It is clear from the record in the case before us that at the time these statements were elicited from the defendant, the investigatory process had focused upon the defendant and became, at that point, accusatory. . . .
>
> Once it is established that the admissions of the defendant were made after the law enforcement process had shifted from investigatory to accusatory, there remains a question of whether or not the admissions were voluntarily made. . . .[28]

The Supreme Court concluded that due to the accused's condition at the time he made the admissions, the admissions were not voluntarily made. The court said: "It cannot be doubted, on this record, that at the time of these inculpatory statements, the defendant had, in substantial part at least, been shorn of his volition. His statement could not have been 'the product of a free intellect.' "[29]

This Court's decision in *Nakdimen* is clearly distinguishable upon the facts. There, the accused had talked to his attorney before voluntarily going to the station house. When the interrogation began, the officer advised the accused of the *Miranda* warnings. However, the accused refused to sign a written waiver of the right to counsel. He told the officer that his attorney "had advised him by telephone, earlier that morning, not to sign anything or provide information beyond his name, address and telephone number."[30] The officer contacted the accused's attorney by telephone. The attorney advised the officer that he could not come to the station house due to prior commitments. They agreed to delay the interview to the next day when counsel could be present.

Counsel advised the officer that all the accused would tell him was information pertaining to his name, address, phone number, social security number, and similar information. The accused asked the officer if he could leave the station house. The officer advised him that he was not free to leave. The officer then took the accused back to the interrogation room and questioned him for an additional ten minutes. This Court affirmed the trial court's suppression of the statement.[31] The facts established that the accused was subjected to a custodial interrogation, and the accused invoked his right to remain silent and have his attorney present during questioning. However, the officer did not honor these rights. This was clearly a violation of *Miranda.* This Court, referring to the language contained in *Vandegriff,* stated the process had shifted from the investigatory stage to the accusatory stage, and the officer was required to advise the accused of his rights.[32] This statement was mere dicta since it actually had no application in the case. This Court cited *Edwards v. Arizona*[33] as authority for the suppression of the statement. The state did not seek an application to appeal to the Supreme Court.

It is interesting to note that this Court did not mention or allude to *Vandegriff* in cases decided before and after *Nakdimen.* In *State v. Stapleton,*[34] the accused voluntarily accompanied police officers to the station house. He was permitted to drive his vehicle. The trial court made the following finding of facts:

> It is clear that the defendant was requested to come to the police station, that he went to the police station voluntarily, that he remained there voluntarily, that he wandered around at will, that he was not confined or questioned even behind closed doors, although on occasion, a door may have been closed to the interrogation

27. 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964).

28. 219 Tenn. at 307–8, 409 S.W.2d at 373.

29. 219 Tenn. at 309, 409 S.W.2d at 373.

30. *Nakdimen,* 735 S.W.2d at 801.

31. *Nakdimen,* 735 S.W.2d at 802.

32. *Nakdimen,* 735 S.W.2d at 803.

33. 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).

34. 638 S.W.2d 850 (Tenn.Crim.App.), *per. app. denied* (Tenn.1982).

room. He was permitted to, and did wander into the hall, to the restroom which was adjacent to an outside door, outside exit; he could have left at any time. Again the defendant saw himself as a witness helping the police so as to pass the suspicion, or point the finger of guilt to someone else.[35]

Although the *Miranda* warnings were not given to the accused prior to the interview, this Court held that the statements were admissible. This Court predicated its holding on the United States Supreme Court's decision in *Oregon v. Mathiason.*

*State v. Davis* [36] was decided four months after *Nakdimen.* In *Davis,* the Department of Human Services notified the local sheriff's office that the accused had sexually abused two girls. Two deputy sheriffs made an effort to locate the accused, but he was not at the location they visited. Thereafter, the sheriff personally called the accused, a former deputy sheriff, and asked him to come to his office. The accused went to the sheriff's office three days later and talked with the deputy assigned to investigate the offenses. The deputy told the accused that "he did not have to make any statement, and he could leave at any time he wanted to." [37] The accused advised the deputy that he wanted to resolve the matter; and he gave the deputy a statement. When the interview was completed, the deputy told the accused he would refer the matter to the district attorney general, who would decide if the accused would be charged with the offenses. The accused was permitted to leave the sheriff's office. After the accused was indicted for the offenses, he moved to suppress the statement. The trial court granted the motion. This Court, relying upon *California v. Beheler,* reversed the decision of the trial court.[38]

Judge Byers, a member of this panel, found that the accused "was not in custody at the time he made the statement, that he was under no coercion from the police to come into the Sheriff's Department and give a statement, and that he was aware he was free to go." [39] Given these facts, the officer was not required to give the *Miranda* warnings before interviewing the accused.

As the appellee candidly admits, our Supreme Court has rejected the "focus" rule. In *State v. Brown,* the Supreme Court said: " 'Focus' was explicitly repudiated as a basis for determining whether a suspect is 'in custody' for the purposes of *Miranda* in *Beckwith v. United States ....*" [40] Moreover, the United States Supreme Court has said that our Supreme Court's analysis of a confession issue in *State v. Hartman* [41] was erroneous.[42] In *Hartman,* the Tennessee Supreme Court said: "We think the admissibility of defendant's statement to Cox turns upon the question of whether or not defendant was *suspected* or *accused* of a crime at the time of Cox's interview." [43] The Court held that "[t]here was no focus upon defendant for the purpose of eliciting a confession, which is a basic posture that gives rise to a person's right to counsel and *Miranda* warnings." [44] Consequently, Hartman's statement was held to be admissible notwithstanding the fact the officer did not give him the *Miranda* warnings before interviewing him. In *Stansbury v. California,* the United States Supreme Court stated:

The court's apparent conclusion that Stansbury's *Miranda* rights were triggered by virtue of the fact that he had become the focus of the officers' suspicions, see ... *State v. Hartman,* 703 S.W.2d 106, 120 (Tenn.1985), cert. denied,

---

**35.** 638 S.W.2d at 859.

**36.** 735 S.W.2d 854 (Tenn.Crim.App.), *per. app. denied* (Tenn.1987).

**37.** *Davis,* 735 S.W.2d at 855.

**38.** *Davis,* 735 S.W.2d at 856.

**39.** *Davis,* 735 S.W.2d at 856.

**40.** 836 S.W.2d at 546 n. 11.

**41.** 703 S.W.2d 106 (Tenn.1985), *cert. denied,* 478 U.S. 1010, 106 S.Ct. 3308, 92 L.Ed.2d 721 (1986).

**42.** *Stansbury v. California,* 511 U.S. ——, 114 S.Ct. 1526, 1530, 128 L.Ed.2d 293, 300–301 (1994) (per curiam).

**43.** *Hartman,* 703 S.W.2d at 120 (emphasis added).

**44.** *Hartman,* 703 S.W.2d at 120.

478 U.S. 1010, 106 S.Ct. 3308, 92 L.Ed.2d 721 (1986) ..., is incorrect as well. Our cases make clear, in no uncertain terms, that any inquiry into whether the interrogating officers have focused their suspicions upon the individual being questioned ... is not relevant for purposes of *Miranda.*[45]

The Court also stated that "[e]ven a clear statement from an officer that the person under interrogation is a prime suspect is not, in itself, dispositive of the custody issue, for some suspects are free to come and go until the police decide to make an arrest."[46]

In summary, the appellee's argument is predicated upon a false premise. The standard enunciated in *Escobedo v. Illinois,* namely, a shift of the process from the investigatory stage to an accusatory stage, often referred to as "focus," was abandoned many years ago in *Miranda v. Arizona. Escobedo* is no longer the law in this jurisdiction, although the trial and appellate courts continue to pay lip service to it.

Today, the test for determining whether the *Miranda* warnings should have been given by a law enforcement officer in this state is whether there has been a "custodial interrogation." As previously stated, the United States Supreme Court has defined this phrase as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."[47] In other words, *Miranda* warnings are required when "there [has been] a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest.'"[48]

■ Applying the applicable standard, it is clear that the statement given by Cooper is admissible as evidence. Cooper was not in custody when he was questioned by Wilson. Cooper arrived voluntarily, he was not required to talk to the investigator, he was free to leave at any time, and he was permitted to leave after the interview. The statement of the investigator regarding the evidence that he possessed did not convert the interview into a custodial interrogation. Nor did the fact that the investigator was seeking an admission from the appellee convert the interview into a custodial interrogation. When an officer or investigator interviews a suspect, the object of the interview is to determine what the suspect knows and, if possible, to obtain an admission of guilt.

WADE, J., and JOHN K. BYERS, Senior Judge, concur.

---

**45.** 511 U.S. at ——, 114 S.Ct. at 1530, 128 L.Ed.2d at 300–301. The appellate courts of this state continue to refer to the "focus" test and use the "focus" test in the determination of confession issues notwithstanding the decisions of the United States Supreme Court to the contrary. *See, for example, Smith,* 868 S.W.2d at 570; *Hartman,* 703 S.W.2d at 120; *State v. Mosier,* 888 S.W.2d 781, 784 (Tenn.Crim.App.1994); *State v. Furlough,* 797 S.W.2d 631, 639 (Tenn. Crim.App.), *per. app. denied* (Tenn.1990); *Nakdimen,* 735 S.W.2d at 803.

**46.** 511 U.S. at ——, 114 S.Ct. at 1530, 128 L.Ed.2d at 300.

**47.** *Miranda v. Arizona,* 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706.

**48.** *California v. Beheler,* 463 U.S. at 1125, 103 S.Ct. at 3520, 77 L.Ed.2d at 1279 (quoting *Oregon v. Mathiason,* 429 U.S. at 495, 97 S.Ct. at 714, 50 L.Ed.2d at 719). *Beheler* is quoted in *Stansbury v. California,* 511 U.S. at ——, 114 S.Ct. at 1529, 128 L.Ed.2d at 298.