# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

## JULY 1998 SESSION



**FILED**

**August 20, 1998**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | **NO. 02C01-9801-CC-00033** |
| Appellant, | ) | |
| | ) | **MADISON COUNTY** |
| **VS.** | ) | |
| | ) | **HON. WHIT LAFON,** |
| **TERRY DON RHEA,** | ) | **JUDGE** |
| | ) | |
| Appellee. | ) | (Motion to Suppress) |


**FOR THE APPELLANT:**

**JOHN KNOX WALKUP**
Attorney General and Reporter

**ELIZABETH T. RYAN**
Assistant Attorney General
Cordell Hull Building, 2nd Floor
425 Fifth Avenue North
Nashville, TN 37243-0493

**JAMES G. (JERRY) WOODALL**
District Attorney General

**JAMES W. THOMPSON**
Assistant District Attorney General
225 Martin Luther King Drive
P.O. Box 2825
Jackson, TN 38302-2825

**FOR THE APPELLEE:**

**CLIFFORD M. COLE**
1355 Lynnfield Road, Suite 101
Memphis, TN 38119


**OPINION FILED:** _____


**AFFIRMED**


**JOE G. RILEY,**
**JUDGE**

**OPINION**

The State of Tennessee brings this interlocutory appeal pursuant to Tenn. R. App. P. 9 and challenges the Madison County Circuit Court's decision to suppress Terry Don Rhea's (defendant's) statement to law enforcement authorities. The trial court found that defendant was subjected to custodial interrogation without having received constitutionally mandated Miranda warnings and, accordingly, suppressed his statement. On appeal, the state contends that the trial court erred in suppressing defendant's statement because he was not in custody when he gave his statement to the police. We affirm the judgment of the trial court.

**I**

The proof at the hearing on the motion to suppress showed that on February 5, 1997, Sergeant Jeff Fitzgerald with the Madison County Sheriff's Department took a report from the victim of an alleged rape. The victim named defendant as the perpetrator of the rape. The next day, February 6, Sgt. Fitzgerald attempted to contact defendant by telephoning him and leaving a message on his answering machine. Defendant subsequently returned the call, and Fitzgerald informed defendant of the allegations against him. Defendant responded that he was familiar with the allegations and agreed to meet with Fitzgerald at his office.

At this point, the testimony becomes conflicting. Fitzgerald testified that defendant arrived at his office at approximately 1:20 p.m. accompanied by two friends. He informed defendant that he was not under arrest, did not have to give a statement and was free to leave at any time. Defendant gave an initial statement that denied any criminal wrongdoing. In a subsequent statement, defendant implicated himself in the offense. Fitzgerald stated the defendant then left the office with his friends at approximately 4:00 p.m.

Fitzgerald testified that defendant came to the police station voluntarily; however, he "probably [would] have gone looking for him" if defendant had not

2

returned his phone call. He stated that he repeatedly told the defendant that he was free to leave at any time, but defendant remained in his office voluntarily. He never informed defendant of his <u>Miranda</u> rights. Fitzgerald testified that although he had probable cause to arrest defendant prior to his giving a statement, he did not arrest defendant because he was not certain whether the victim wanted to prosecute.

Defendant also testified at the hearing. His testimony differed in many respects to the testimony of Fitzgerald. In February 1996, defendant was eighteen (18) years old, a student at Lambuth University and had a 1.85 grade point average. He spoke with Sgt. Fitzgerald on the telephone and agreed to meet with him at his office. He arrived at the station at approximately 12:30 p.m. with two friends. Fitzgerald informed him when he arrived that if he had not come to the station voluntarily, Fitzgerald would have "picked [him] up the next day." Defendant testified that while the secretary was typing his first statement, Sgt. Fitzgerald's attitude began to change. Fitzgerald told him that he knew of a doctor that would be willing to testify against defendant in court. Defendant noticed a rape kit with his name on it in the office during the interview. Fitzgerald told defendant that if he confessed he would save himself, his family and the football team[1] from embarrassment. Fitzgerald informed defendant that the victim's father had been making threats against the "S.O.B" who committed the rape, but that if defendant confessed, he (Fitzgerald) might convince the victim's father not to prosecute. As a result, defendant gave a second statement implicating himself. He left the police station at approximately 5:30 p.m.

Defendant testified that Fitzgerald only told him he was free to leave after he signed the second statement. He was not allowed to leave Sgt. Fitzgerald's office without Fitzgerald being present. When he asked for a drink of water, Sgt. Fitzgerald accompanied him to the water fountain. He had never been arrested before and did not feel free to leave at any time prior to his signing the second statement.

Robert Turner, a friend of defendant, also testified at the hearing. Turner

---

[1] Defendant was a member of the Lambuth football team in February of 1996.

3

stated that after he and defendant arrived at the police station, he stayed in the waiting area while defendant spoke with Sgt. Fitzgerald. Turner testified that approximately one hour after arriving, Sgt. Fitzgerald came into the waiting area and stated that defendant was "in some trouble" and that it would be a while before he was "done." Fitzgerald told Turner that he could leave and pick defendant up when he was "done talking with [defendant]."

In its oral findings of fact, the trial court noted that defendant was eighteen (18) years old, had a 1.85 grade point average and had no familiarity with the criminal justice system. The trial court found that defendant was the "target" of the investigation and reasonably believed that he was in custody at the time he was questioned. Therefore, because Sgt. Fitzgerald did not inform defendant of his Miranda rights, the trial court granted defendant's motion to suppress his statement. From this decision, the state brings this interlocutory appeal.

## II

The state contends that the trial court erred in suppressing defendant's statement because defendant was not in custody when he gave his statement to Sgt. Fitzgerald; thus, Sgt. Fitzgerald was not required to inform defendant of his Miranda rights. The state further argues that the trial court erroneously considered whether defendant was the "focus of the investigation" as a circumstance warranting suppression of the statement.

### A.

The findings of fact made by the trial court at the hearing on the motion are binding upon this Court unless the evidence contained in the record preponderates against these findings. State v. Smith, 933 S.W.2d 450, 455 (Tenn. 1996); State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996); State v. Stephenson, 878 S.W.2d 530, 544 (Tenn. 1994). The trial court, as the trier of fact, is able to assess the credibility of the witnesses, determine the weight and value to be afforded the evidence and resolves any conflicts in the evidence. See State v. Odom, 928 S.W.2d at 23.

4

However, this Court is not bound by the trial court's conclusions of law. The appellant has the burden of establishing that the evidence contained in the record preponderates against the findings of fact made by the trial court. Braziel v. State, 529 S.W.2d 501, 506 (Tenn. Crim. App. 1975).

**B.**

In Miranda v. Arizona, the United States Supreme Court held that the prosecution cannot admit a statement by the defendant stemming from "custodial interrogation" unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694. The Court defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id.

In State v. Anderson, 937 S.W.2d 851, 852 (Tenn. 1996), the Tennessee Supreme Court held that in order to assess whether an individual is in "custody" for the purposes of Miranda, a court must inquire whether "under the totality of the circumstances, a reasonable person in the suspect's position would consider himself or herself deprived of freedom of movement to a degree associated with a formal arrest." In so holding, the Court delineated several factors pertinent to that determination, including:

> the time and location of the interrogation; the duration and character of the questioning; the officer's tone of voice and general demeanor; the suspect's method of transportation to the place of questioning; the number of police officers present; any limitation on movement or other form of restraint imposed on the suspect during the interrogation; any interactions between the officer and the suspect, including the words spoken by the officer to the suspect, and the suspect's verbal or nonverbal responses; the extent to which the suspect is confronted with the law enforcement officer's suspicions of guilt or evidence of guilt; and finally, the extent to which the suspect is made aware that he or she is free to refrain from answering questions or to end the interview at will.

Id. at 855. The determination of whether an individual is in custody is fact specific, and the trial court should assess the applicability of the relevant factors in making its findings. Id.

**C.**

Initially, we must agree with the state that the trial court erroneously

considered the "focus of the investigation" test as a basis for suppressing defendant's statement. Whether the accused is the "focus" of the investigation is not relevant to the inquiry. Anderson, 937 S.W.2d at 854; State v. Cooper, 912 S.W.2d 756, 766 (Tenn. Crim. App. 1995).

However, upon our review of the trial court's findings in conjunction with the relevant factors enunciated in Anderson, we must conclude the trial court correctly determined that, under the totality of the circumstances, a reasonable person in defendant's position would consider himself in custody. Although defendant agreed to speak with Sgt. Fitzgerald, the interview took place at Fitzgerald's office. The interrogation lasted from three (3) to five (5) hours. Although only one officer interviewed defendant, the defendant was not allowed to leave Sgt. Fitzgerald's office without an escort. In fact, Fitzgerald accompanied defendant to a water fountain when he asked for a drink of water. The trial court found that Fitzgerald told the defendant "that if he would give him a statement, that would probably keep him out of trouble." The trial court also found that Sgt. Fitzgerald persisted in questioning defendant until defendant implicated himself in the offense.

The state points to numerous instances where Sgt. Fitzgerald testified that he informed defendant that he was free to leave at any time. However, defendant denied that Fitzgerald told him this until after he signed the second, incriminating statement. By its findings, the trial court implicitly accredited the testimony of the defendant over that of Sgt. Fitzgerald. We are not free to ignore these factual determinations. The trial court was in a much better position than this Court to assess the credibility of the witnesses.

The state has not proven that the evidence preponderates against the trial court's findings of fact; thus, this Court is bound by those findings. In applying these findings to the Anderson criteria, we conclude that the trial court did not err in granting defendant's motion to suppress his statement to Sgt. Fitzgerald.

For the foregoing reasons, the judgment of the trial court is affirmed.

6

_____
**JOE G. RILEY, JUDGE**

**CONCUR:**




_____
**CURWOOD WITT, JUDGE**




_____
**ROBERT W. WEDEMEYER, SPECIAL JUDGE**

7