**STATE of Tennessee, Appellee,**

v.

**Edith WEATHERSPOON, Appellant.**

Court of Criminal Appeals of Tennessee, at Jackson.

June 11, 1986.

Permission to Appeal Denied by Supreme Court Sept. 29, 1986.

Jerry C. Cox and Richard B. Fields, Cox & Fields, Jackson, for appellant.

W.J. Michael Cody, State Atty. Gen. & Reporter, William Barry Wood, Asst. State Atty. Gen., Nashville, Robert "Gus" Radford, Dist. Atty. Gen., Huntingdon, Creed McGinley, Asst. Dist. Atty. Gen., Savannah, Tom Woodall, Asst. Dist. Atty. Gen., Camden, for appellee.

OPINION

BYERS, Judge.

The defendant was convicted of second degree murder and sentenced to serve twelve years as a standard offender.

The defendant says the evidence does not support the verdict, says her motion for a change of venue should have been granted, says the state used its peremptory challenges to exclude blacks from the jury and made improper argument to the jury, and says she should be classified as an especially mitigated offender.

The judgment is affirmed.

On August 10, 1984, the victim, along with two friends, was driving along a street near Savannah. He came upon a vehicle stopped in the lane of traffic in which he was driving. The victim became upset and demanded that the driver move the vehicle.

During this time, the defendant came from her house to the street and engaged in verbal exchanges with the victim. The driver of the other vehicle drove away, and the victim started to drive on, whereupon the defendant threw a glass of tea into his vehicle.

The victim left his vehicle, and the defendant ran into her house with the victim in pursuit.

What then occurred at the house of the defendant was in dispute between the state's witnesses and the defendant's witnesses, but it is clear the victim was shot in the lower back by the defendant, he returned to his truck, and later died as a result of the wound.

One state's witness, who was a neighbor of the defendant, testified she could see the victim at the porch of the defendant's house. She testified she could see only the upper portion of the victim because of

hedges along the street, but she was able to see him being struck on the head by a metal pole. She further testified the victim raised his hands, started to walk away, and was then shot.

The two people in the victim's vehicle testified they could not see any of what occurred at the porch, but they heard scuffling and words. They heard the victim say he was leaving, and then they heard the shot.

Two other state's witnesses, whose view was partially obstructed by the hedges, testified they observed the incident. They testified the victim did not raise his hands and say he was leaving until after he was shot.

The defendant's witnesses, who were in the house or yard of the defendant, testified the victim attempted to enter the home and was prevented from doing so by her mother and her elderly grandmother. They testified the victim first pushed the elderly woman against the mailbox and then pushed the mother onto a porch swing and commenced to choke her.

These two women, two visitors, and the defendant all testified the victim was still choking the defendant's mother when he was shot.

The defendant's testimony also showed she left the street and went directly to the bedroom in her house, where she got the gun which she used to shoot the defendant. There is no evidence she took any other action to terminate the dispute and no evidence of any weapon used or displayed by the victim.

There were, as is always the case, some discrepancies in the testimony of the witnesses in this case. Most fell on the side of the defense witnesses. We note, in particular, the testimony of the defendant that she did not throw tea into the victim's vehicle or on him, a claim which contradicted all other accounts of the initial confrontation.

The upshot of all this is that a question of credibility of the witnesses was clearly drawn and the jury was burdened with sorting out the testimony and believability of the witnesses. Their verdict established the credibility of three of the state's witnesses and adopted the state's theory of the case. The only issue before us is whether there is sufficient evidence to support the verdict beyond a reasonable doubt because we are not allowed to assess the credibility of the witnesses or to weigh the evidence. *State v. Johnson,* 692 S.W.2d 412 (Tenn.1985); *State v. Cabbage,* 571 S.W.2d 832 (Tenn.1978).

■ We conclude the testimony of the witnesses that the victim was shot after he abandoned the dispute is sufficient evidence upon which the jury could find the killing was unjustified. *See State v. Reynolds,* 666 S.W.2d 476 (Tenn.Cr.App.1984). All the elements of second degree murder are established by the proof.

■ There is no evidence in this record to support the defendant's claim that a change of venue should have been granted.

The defendant read into the record some newspaper excerpts. One article about the Ku Klux Klan did not mention this case; another article mentioned the case but not the Klan; and a third was a racist letter which mentioned the area of the crime.

These publications are not sufficient to show the defendant could not get a fair and impartial trial in Hardin County; nor does the record of the jury selection show that any juror was influenced by the publicity. *See State v. Garland,* 617 S.W.2d 176 (Tenn.Cr.App.1981).

In the third issue the defendant says the state used its peremptory challenges to exclude from the petit jury members of her race, as condemned in the recent decision of *Batson v. Kentucky,* —— U.S. ——, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), wherein the Supreme Court held that the use of peremptory challenges intentionally to exclude jurors of a defendant's race from the jury is error.

■ The defendant did not show in this case that the state's attorney used his per-

emptory challenges intentionally to exclude blacks from the jury.

The defendant asserts the state excused all the black prospective jurors, who were three in number. He failed to state, as the record shows, that the state excused four jurors, one of whom was Caucasian.

The record also shows the jurors who were excused were acquainted with some of the people in the case, and upon this basis they were excused. This is a neutral, rational, and specific objection sufficient to rebut any inference of illegal discrimination.

 Finally, in the closing argument to the jury, the state referred to the defendant as an "executioner." The defendant did not make a contemporaneous objection to this statement but waited until the close of the argument. In our view, the objection came too late, although the judge easily could have instructed the jury to disregard the remark. We do not find this isolated remark so serious that we should ignore the requirement of a contemporaneous objection.

In a supplemental brief, the defendant also asserts she should be classified as an especially mitigated offender, T.C.A. § 40–35–108. The issue was properly presented to the trial court and orally amended to the new trial motion, which was heard immediately following the sentencing hearing. Although the supplemental brief was filed after the state had filed a responsive brief, the state has not asked for leave to reply, and we elect to consider the issue.

The defendant's criminal record consists of a sixty-day sentence for assault and battery and a thirty-day sentence for disorderly conduct. She thus satisfies part of the qualifications of an especially mitigated offender. See T.C.A. § 40–35–108(b)(1)–(2).

Nonetheless, we do not find any "extreme mitigating factors." Id. § 40–35–108(b)(3). Without according any presumption of correctness to the findings of the trial court, we are in full agreement with him that the defendant missed several opportunities to withdraw from the alterca-

tion. The provocation under which the defendant acted was largely of her own making. Having first intruded into the argument at the roadside and then renewing the dispute as the victim drove away, the defendant cannot now claim any benefit from the victim's subsequent response. See T.C.A. § 40–35–110(3).

We are also not convinced that the circumstances of the offense are so unusual as to negate any sustained intent to violate the law. T.C.A. § 40–35–110(12). The defendant's own testimony about the misdemeanor convictions indicates that she has previously resorted to illegal, physical force to resolve disputes. She is correctly classified as a standard offender.

O'BRIEN and DAUGHTREY, JJ., concur.