IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

SEPTEMBER 1997 SESSION

FILED

**February 24, 1998**

**Cecil Crowson, Jr.**
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| APPELLEE, | ) | |
| | ) | No. 02-C-01-9610-CC-00362 |
| | ) | |
| | ) | Henderson County |
| v. | ) | |
| | ) | J. Franklin Murchison, Judge |
| | ) | |
| | ) | (Rape and Sexual Battery) |
| DONALD LONG, | ) | |
| | ) | |
| APPELLANT. | ) | |

FOR THE APPELLANT:

George Morton Googe
District Public Defender
227 W. Baltimore Street
Jackson, TN 38301

Vanessa D. King
Assistant Public Defender
227 W. Baltimore Street
Jackson, TN 38301

FOR THE APPELLEE:

John Knox Walkup
Attorney General & Reporter
500 Charlotte Avenue
Nashville, TN 37243-0497

Elizabeth T. Ryan
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243-0493

James G. Woodall
District Attorney General
P.O. Box 2825
Jackson, TN 38302

Donald H. Allen
Assistant District Attorney General
P.O. Box 2825
Jackson, TN 38302

OPINION FILED:_____

AFFIRMED

Joe B. Jones, Presiding Judge

# OPINION

The appellant, David Long (defendant), was convicted of rape, a Class B felony, and sexual battery, a Class E felony, by a jury of his peers. The trial court, finding the defendant was a standard offender, imposed Range I sentences consisting of confinement for twelve (12) years for rape and two (2) years for sexual battery in the Department of Correction. The two sentences are to be served concurrently. In this court, the defendant contends: (1) the indictment failed to allege the requisite mens rea, (2) the evidence was insufficient to convict the defendant of rape, (3) the trial court erred by failing to sustain the defendant's Batson objection when the State of Tennessee peremptorily challenged a member of his race, (4) the trial court erred by denying his motion to suppress an incriminating statement given to the police, (5) the jury instructions and convictions for rape and sexual battery violated the Double Jeopardy Clause of the Fifth Amendment because the events involved a single episode, (6) the trial court erred by failing to instruct the jury on the lesser included offense of statutory rape, and (7) the trial court erred by applying enhancement factors (4), the victim was particularly vulnerable because of age or physical or mental disability, and (15), he breached a position of private trust. After a thorough review of the record, the briefs submitted by the parties, and the law governing the issues presented for review, it is the opinion of this court that the judgment of the trial court should be affirmed.

The victim, M.C.,[1] and Christine Taylor, the defendant's stepdaughter, attended karate classes together. Since M.C.'s mother was working at night, it was agreed that M.C. could spend the week with Christine and her family. This arrangement made it possible for M.C. to attend karate classes. The victim was thirteen years of age. Christine was a few years younger than M.C.

During the early morning hours of July 21, 1994, the victim was asleep in the same bed with the defendant's stepdaughter. The victim awoke when the defendant grabbed her buttocks. The defendant whispered in her ear, "Man, oh, man I want to fuck you." As

---

[1]It is the policy of this Court not to identify the minor victims of sexual abuse.

she woke up, the defendant rolled her over onto her back and put his hand down her pants. The victim stated she was afraid to say anything because she thought the defendant might hurt her. She tried to avoid his advances by rolling back onto her stomach and tucking the covers underneath her. The defendant then rolled her onto her back again and put his hand down her pants. He unbuttoned and unzipped her shorts, and put his finger in her vagina, moving it back and forth for approximately one minute. The defendant then buttoned and zipped up her shorts.

The defendant reached inside the victim's shirt and began rubbing and squeezing both of her breasts. Christine woke up during the incident. The defendant stopped and laid down on the floor by the bed so Christine could not see him. When Christine went back to sleep, the defendant resumed fondling the victim. He laid down beside the victim, took out his erect penis, and put her hand on it. He put his hand over hers and made the victim masturbate him. The victim pulled her hand away before he ejaculated. While the victim was frightened, she remained silent because she was afraid "he might hit me or something." When the defendant heard his wife wake up in another bedroom, he left. Before leaving, the defendant turned to the victim and said "I see. You want me to leave you alone."

The next morning the victim told Christine what had occurred. When a family friend stopped by the residence to check on the victim, the friend realized something was wrong and took the victim to her mother. The victim told her mother about the events that had taken place, and the two went to the police station to file a report. M.C. and her mother also went to the hospital so M.C. could be examined.

The following day, officers talked to the defendant regarding the complaint received from M.C. and her mother. The defendant subsequently gave the police a statement regarding what had occurred. He told the police:

> I walked over to the bed and rubbed Melissa on the butt. I began to rub her breast through her clothing. I reached down and rubbed her vagina with my hand. At this time she had her shorts on.
>
> I later put my hand down her panties and shorts. I placed my finger in her vagina and began to move my finger in and out. I did this for about one minute or less.

3

> I pulled my penis from my shorts and placed Melissa's hand on it. I held her hand by the wrist and moved her hand back and forth on my penis. She masturbated me for about a minute.
>
> I stopped and whispered in her ear, "I'm going to leave you alone."

The defendant disputed parts of his statement during the trial. He testified he did not tell the victim "I want to fuck you," did not roll the victim onto her back when she turned away from him and tucked the covers around her, and did not digitally penetrate the victim. The defendant admitted he fondled her breasts and buttocks, and placed her hand on his penis.

## I.

The defendant contends the trial court did not have jurisdiction in this cause because the indictments for rape and sexual battery were fatally defective. The defendant argues the indictments were void because they did not allege the requisite mens rea for the crimes charged. He cites State v. Roger Dale Hill, Sr., Wayne County No. 01-C-01-9508-CC-00267, 1996 WL 346941 (Tenn. Crim. App., Nashville, June 20, 1996) and State v. Nathaniel White, Sullivan Co. No. 03-C-01-9408-CR-00277, 1995 WL 336977 (Tenn. Crim. App., Knoxville, June 7, 1995), in support of his argument.

The indictments in this case were adequate. The indictments charged that the defendant "did unlawfully and forcibly sexually penetrate [M.C.]," and "did unlawfully commit sexual battery by using force to engage in sexual contact with [M.C.]." Like the indictments in Hill and White, both indictments in the present case used the term "unlawfully" rather than specifying a mental state. However, the supreme court recently held that this language is sufficient for an indictment to pass constitutional, statutory, and common law muster. State v. Hill, 954 S.W.2d 725 (Tenn. 1997).

This issue has no merit.

4

## II.

The defendant contends the evidence presented at trial was insufficient to prove beyond a reasonable doubt that he was guilty of rape. The defendant asserts the state did not present sufficient evidence to prove the defendant penetrated the victim using force or coercion. By only presenting testimony from the victim, without any corroborating medical or other independent evidence, the defendant argues the state failed to meet its burden of proof. State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984).

## A.

When an accused challenges the sufficiency of the convicting evidence, this court must review the record to determine if the evidence adduced at trial is sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Dykes, 803 S.W.2d 250, 253 (Tenn. Crim. App.), per. app. denied (Tenn. 1990).

In determining the sufficiency of the convicting evidence, this court does not reweigh or reevaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App.), per. app. denied (Tenn. 1990). Nor may this court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859, cert. denied, 352 U.S. 845, 77 S.Ct. 39, 1 L.Ed. 49 (1956). To the contrary, this court is required to afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, not this court. Cabbage, 571 S.W.2d at 835. In State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973), our supreme court said: "A guilty verdict by the jury, approved by

the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State."

Since a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused, as the appellant, has the burden in this court of illustrating why the evidence is insufficient to support the verdicts returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the facts contained in the record are insufficient, as a matter of law, for a rational trier of fact to find that the accused is guilty beyond a reasonable doubt. Tuggle, 639 S.W.2d at 914.

**B.**

The offense of rape is defined by statute as "unlawful sexual penetration of a victim by the defendant" when "force or coercion is used to accomplish the act." Tenn. Code Ann. § 39-13-503(a)(1). Before the defendant could be convicted of rape the State of Tennessee was required to prove beyond a reasonable doubt the defendant (a) unlawfully penetrated the victim and (b) used force or coercion. The record establishes each element of this offense.

The victim, M.C., was spending the week at the defendant's house in July of 1994, so she could go to karate class with the defendant's stepdaughter, Christine, while M.C.'s mother worked nights. At the time of the offense, M.C. was 13 years old. The defendant was 5 feet, 11 inches tall and 280 pounds when the incident occurred.

The victim testified she and Christine were asleep in bed together on her third night at the defendant's residence when she was awakened by the defendant grabbing her buttocks. The defendant whispered in her ear "Man, oh, man I want to fuck you." As she woke up, the defendant rolled her over onto her back and put his hand down her pants. The victim stated she was afraid to say anything because she thought the defendant might hurt her. Instead, she tried to avoid his advances by rolling back onto her stomach and tucking the covers underneath her. The defendant then rolled her onto her back again and put his hand down her pants. The victim testified that he unbuttoned and unzipped her

6

shorts, and put his finger in her vagina, moving it back and forth for approximately one minute. The victim testified she was frightened, but that she did not call out because she was afraid "he might hit me or something."

The next day, the defendant gave a statement to the police in which he stated "I . . . put my hand down her panties and shorts. I placed my finger in her vagina and began to move my finger in and out. I did this for about one minute or less." However, the defendant disputed this portion of his statement when he testified during the trial. He testified that he did not tell the victim "I want to fuck you," did not roll the victim onto her back when she turned away from him and tucked the covers around her, and that he did not digitally penetrate the victim. The defendant conceded the statement he gave the police was accurate in stating he fondled her breasts and buttocks and placed her hand on his penis. At trial the defendant said:

> I did walk over to the bed and grab her on the butt, and I did feel her t---s. But as far as putting my hand down her pants, no, I did not because she was wearing a body suit along with bra and panties with biker type shorts and another shirt on over that. So as far as -- and I could not unzip or unbutton them because, like I said, they were like biker shorts.

The defendant testified the reason he told the police he digitally penetrated the victim was because the officer told him what the victim's statement had been and then "stated that I needed to tell him what he knew to be the truth or I was going to do some time, and he meant some serious hard time." The defendant said the officer promised that if he told truth he could go home, go to work Monday, and simply have to submit to counseling. In response, the defendant said "I told him -- what that statement there -- yes, I told him all of that, but that was after he had told me what her statement was, which is the same as that."

As previously stated, the resolution of conflicting evidence is for the jury, not this court. The jury saw the witnesses, observed their demeanor, assessed their credibility, and concluded that the defendant raped the victim.

There is sufficient evidence to support a finding by a rational trier of fact the defendant was guilty of the rape of M.C. beyond a reasonable doubt. Tenn. R. App. 13(e).

This issue has no merit.

7

# III.

The defendant contends the trial court erred in overruling counsel's objection pursuant to Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The defense argues the State of Tennessee used two peremptory challenges to strike African-American venire members who knew the defendant. The defendant is an African-American. The defendant states his equal protections rights were violated because the state used its peremptory challenges against the African-American venire members but not against two Caucasian venire members who also knew the defendant.

Stephen Priddy, a prospective juror, was called during the selection of an alternate juror. Mr. Priddy was peremptorily challenged. The trial court advised Mr. Priddy he was excused. Defense counsel requested a sidebar conference. The following occurred during the sidebar conference.

> MS. KING: Your Honor, just to reserve this matter for appeal, we make a Batson Motion.
>
> THE COURT: I understand that. That's overruled in this particular case. I don't see any pattern in the direction that Mr. Allen has been following, but in any event with this particular witness, he knows the defendant. That's enough, I think, to get it by Batson, considering there have been no challenges based upon race by Mr. Allen that I could see. And that one -- you have someone that knows the defendant. Isn't that what he said?
>
> MR. ALLEN: Yes, sir, he said he knew the defendant. He had helped him move.
>
> THE COURT: All right. Note the objection.
>
> MR. ALLEN: He said that he had helped him move.
>
> MS. KING: Your Honor, he also said that he could be fair and impartial.
>
> THE COURT: I understand that. He's taking a peremptory challenge. There's a basis for a perempt here -- not a basis for cause. But I don't think your Batson objection is good, but nevertheless, you have made it. It's in the record.

The next mention of this issue appears in the motion for a new trial. The defendant alleged: "The defendant was denied a trial by a jury of his peers, to-wit: the trial Court erred in failing to sustain Batson motion."

8

This issue was discussed during the hearing on the motion for a new trial. The following colloquy occurred during the hearing:

> MS. KING: My next point is that there were (sic) a Batson issue in the trial, Your Honor. If you will recall, Mr. Allen struck two black jurors who previously had contact with Mr. Long and who knew him, but he did also leave white jurors on the jury that knew the defendant, Mr. Long, before trial. I believe the -- that the juries (sic) were rehabilitated, and Mr. Allen still continued to strike those jurors, I believe, primarily because they had known Mr. Long before trial and because they were of the African persuasion (sic).
>
> THE COURT: All right. Do you care to be heard on that Mr. Allen. On the striking--
>
> MR. ALLEN: Your Honor, all I would say is that that objection was made at the time that the jury was being selected. The Court ruled on it at that point. I do remember the jurors that were struck by the State, indicated that the (sic) knew the defendant. I think they worked with him out at Johnson Controls -- wherever it was. They had worked with him a pretty long time and knew him fairly well, as best I remember. The Court ruled on that at the time of the trial.
>
> * * * *
>
> THE COURT: On the Batson thing -- the Court looked at those things awful close, and we routinely -- it looked like if we here headed in that direction of there being a question about it -- I required the Attorney General to state why he was challenging a minority -- or whatever the situation may be. In this case Mr. Allen -- there was no violation here. He had some grounds for challenging them. There were no Batson violations.

Given the state of the record, this court will now consider this issue. The record is devoid of evidence regarding this issue. This court must revert to other parts of the record to determine certain facts, e.g., the defendant is an African American based upon photographs introduced into evidence.

## A.

In Batson v. Kentucky, the United States Supreme Court held that the use of peremptory challenges by the state to exclude jurors on the basis of their race violates the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution. 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); State v. Jones, 789 S.W.2d 545, 548 (Tenn.),

9

cert. denied, 498 U.S. 908, 111 S.Ct. 280, 112 L.Ed.2d 234 (1990).

When the accused desires to challenge the State of Tennessee's use of a peremptory challenge to exclude a juror based on race or gender, the accused must bring the objection prior to overtly or tacitly accepting the jury, and prior to the administration of the jury's oath. State v. Peck, 719 S.W.2d 553, 555 (Tenn. Crim. App.), per. app. denied (Tenn. 1986); State v. Pamela F. Boston, Hamilton County No. 03-C-01-9509-CR-00284, 1996 WL 653821 (Tenn. Crim. App., November 8, 1996), per. app. denied (Tenn. June 2, 1997). If the accused does not raise the Batson issue before the jury is sworn, the accused is deemed to have waived the issue. Boston, supra; Peck, 719 S.W.2d at 555. See Ford v. Georgia, 498 U.S. 411, 423, 111 S.Ct. 850, 857, 112 L.Ed. 2d 935, 948-49 (1991) (granting state courts the authority to consider Batson issues waived if not raised before the jury is sworn); State v. Robert Williams, Hamilton County No. 03-C-01-9302-CR-00050, 1996 WL 146696 (Tenn. Crim. App., Knoxville, April 2, 1996) (Batson issue raised for the first time in the motion for a new trial deemed waived); State v. Paulette Irby and Pete Irby, Cocke County No. 130, 1988 WL 60393 (Tenn. Crim. App., Knoxville, June 14, 1988), per. app. denied (Tenn. September 6, 1988) (Batson issue raised for the first time in the motion for a new trial deemed waived); State v. Johnny W. Philpot, Hamilton County No. 988, 1987 WL 12052 (Tenn. Crim. App., Knoxville, June 12, 1987), per. app. denied (Tenn., September 8, 1987) (Batson issued raised for first time in the motion for new trial deemed waived).

To establish a Batson violation, a defendant must first make out a prima facie case of discrimination; simply dismissing African American jurors alone is not unconstitutional. State v. Bell, 759 S.W.2d 651, 653 (Tenn. 1988), cert. denied, 489 U.S. 1091, 109 S.Ct. 1560, 103 L.Ed.2d 862 (1989). A defendant must: (1) show that the challenged juror is a member of a "cognizable racial group" and the prosecution used peremptory challenges to exclude members of defendant's race; (2) rely on the fact that peremptory challenges constitute a "jury selection practice that permits 'those to discriminate who are of a mind to discriminate;'" and (3) demonstrate the relevant facts and circumstances give rise to an inference that the prosecutor challenged jurors due to their race. Batson, 476 U.S. at 96, 106 S.Ct. at 1723, 90 L.Ed.2d at 87-88. Once a defendant makes out a prima facie case

10

of purposeful discrimination, the burden shifts to the state to provide a race-neutral reason for the exclusion.  Batson, 476 U.S. at 97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88.  This explanation does not have to rise to the level of a justification for a challenge for cause.  The trial court must then determine whether the peremptory challenge was motivated by discriminatory purpose by examining the "totality of relevant facts."  Bell, 759 S.W.2d at 653.

When reviewing a trial court's ruling on a Batson issue, this court "cannot substitute . . . [its] judgment for that of the trial court or declare error absent a finding that the trial judge abused his discretion."  State v. Matthew L. Moates, Monroe County No. 03-C-01-9610-CR-00383, slip op. at 5, 1997 WL 344800 (Tenn. Crim. App., Knoxville, June 24, 1997); State v. Melson, 638 S.W.2d 342, 347 (Tenn. 1982), cert. denied, 459 U.S. 1137, 103 S.Ct. 770, 74 L.Ed.2d 983 (1983).  In view of these principles, this court must determine whether the trial court erred in failing to sustain the defendant's Batson objection.

**B.**

Based upon the record before us, there is no showing of discriminatory purpose by the prosecutor in exercising his peremptory challenges.

The defendant is an African American.  The state used two peremptory challenges to remove African American venire members who knew the defendant, while leaving two Caucasians on the panel who also had prior contact with the defendant.  The state used one peremptory challenge to strike Ms. Latonia Joseph, an African American woman who had worked with the defendant for three years.  When the state peremptorily challenged Ms. Joseph, defense counsel did not interpose a Batson objection. Subsequently, two Caucasian venire members, Ms. Jean and  and Mr. Emory,  indicated that they had encountered the defendant before.  Ms. Jean believed she had worked with the defendant at some point in the past.  She was not sure she worked for the same employer.  Mr. Emory had seen the defendant in a supermarket.

Finally, Stephen Priddy, another African American venire member, indicated that he had been friends with the defendant two years before charges were brought in this case

11

and he had helped the defendant move on one occasion. Mr. Priddy also acknowledged he had received information about the details of the crime at issue "on the street." The assistant district attorney general exercised another peremptory challenge to remove Mr. Priddy, who was being considered as an alternate juror. At this time, defense counsel made a Batson objection to the removal of Mr. Priddy; defense counsel made no mention of the earlier removal of Ms. Joseph. In fact, the defendant made no reference to the removal of Ms. Joseph as a Batson violation until his motion for new trial.

Since the defendant did not raise a Batson issue regarding Latonia Joseph until the hearing on the motion for a new trial, the issue of her removal has been waived. Williams, supra; Irby, supra; Philpot, supra. The complaint regarding the two white prospective jurors, one who might have worked with the defendant and one who may have seen him in a supermarket, becomes moot. Ms. Joseph was the only person who had definitely worked with the defendant, therefore her removal over the white prospective jurors was appropriate.

The trial court overruled the defendant's Batson objection following the state's challenge to Mr. Priddy. The court found the defendant had failed to establish a prima facie case of purposeful discrimination. Thus, the state was not required to provide a legitimate, nondiscriminatory reason for the peremptory strike of Mr. Priddy. However, the assistant district attorney general did state for the record the state's justification for the peremptory challenge of Mr. Priddy. The assistant district attorney general stated Mr. Priddy "said he knew the defendant. He had helped him to move." The record further reflects Mr. Priddy was aware of the defendant's predicament by talking to people "on the street." In addition, the defendant and Mr. Priddy had been rather close friends.

### C.

The appellant failed to establish a prima facie case of exclusion based upon race. State v. Peck, 719 S.W.2d 553, 555-56 (Tenn. Crim. App.), per. app. denied (Tenn. 1986). There is no evidence in the record that the race of Mr. Priddy was a factor in his exclusion. Further, the record does not state whether any other African American venire members

were on the panel or whether any other peremptory challenges were used by the state against African-American venire members.

Even if the trial court had found a prima facie case of discriminatory purpose existed, the state had a legitimate, nondiscriminatory justification for excluding Mr. Priddy. The explanation given by the District Attorney General was a "neutral, rational and specific objection sufficient to rebut any inference of illegal discrimination." State v. Weatherspoon, 719 S.W.2d 304, 307 (Tenn. Crim. App.), per. app. denied (Tenn. 1986). Therefore the trial court did not abuse its discretion by overruling the defendant's Batson objection.

This issue has no merit.

## IV.

The defendant contends the trial court committed error of prejudicial dimensions by denying his motion to suppress an incriminatory statement he gave to Lexington police officers. He argues the police officers failed to give him the Miranda warnings prior to questioning him about the allegations made by M.C. See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In his brief, the defendant states: "Additionally, the Appellant contends that promises were made to solicit the statement given." However, the defendant does not state what "promises" were made by Investigator Berryman to induce him to make the incriminating statement in question.

Investigator Ray Berryman of the Lexington Police Department and the defendant testified at the suppression hearing. The trial court made findings of fact following the introduction of evidence and the argument of counsel for the respective parties.

Investigator Berryman testified he talked with the victim on the evening of July 21, 1994. The next morning, he and Investigator Bruce Rhodes went to the defendant's place of employment. Investigator Berryman asked the defendant if he would accompany them to the Lexington Police Department. He explained to the defendant he wanted to interview him. The defendant voluntarily agreed to accompany the officers. While en route to the police station, the defendant asked the investigators why they wanted to interview him. Officer Berryman explained the nature of the allegations to the defendant. The defendant

13

was not asked any questions prior to their arrival at the police station.

According to Investigator Berryman, he gave the defendant the Miranda warnings when they arrived at the police station. The defendant stated he understood his rights. The investigator next explained the waiver of rights form and asked the defendant to read the form himself. The defendant stated he understood the content of the waiver of rights form and he signed the form. Thereafter, the defendant was questioned regarding M.C.'s allegations. The defendant freely and voluntarily gave the incriminating statement hereinabove set forth. Investigator Berryman testified he made no promises to the defendant.

The testimony of the defendant conflicts with the testimony of Investigator Berryman as to every material fact. The defendant testified Investigators Berryman and Rhodes began questioning him while en route to the police station. The Miranda warnings were not given before the questioning commenced. The questioning continued at the police station. He agrees he made a statement to the investigators. He admitted he was not threatened or coerced to make the statement. However, he testified he signed the waiver of rights form after he had given the statement – the same time he signed the statement he made to the investigators.

The trial court made findings of fact after the presentation of evidence and the arguments of counsel. In ruling, the court said:

> The Motion to Suppress is denied. The Court makes a finding, first of all, that Mr. Long was not arrested before he went down and made his statement. Also, that he was given a full Miranda Warning. He understood it [these rights] before he made his statement. There was no force, coercion, fraud, promises or threats that were made by Officer Berryman to cause Mr. Long to make a statement, and that, in summary, the statement was made freely and voluntarily by Mr. Long and is admissible in Court.

When an accused challenges the admissibility of a statement he made to a law enforcement official, it is the duty of the trial court to conduct an evidentiary hearing, make findings of fact, and determine whether the statement is admissible as evidence during the trial on the merits. State v. Pursley, 550 S.W.2d 949, 952 (Tenn. 1977). In making its findings of fact, the court must assess the credibility of the witnesses, resolve any conflicts

14

in the evidence adduced during the hearing, and, finally, determine the weight and value to give the evidence. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996).

When an issue involving the suppression of evidence is presented for review, the appellate court must afford the findings of fact made by the trial court the weight of a jury verdict. Odom, 928 S.W.2d at 23; State v. Makoka, 885 S.W.2d 366, 371-72 (Tenn. Crim. App.), per. app. denied, (Tenn. 1994). In addition, "[t]he party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." Odom, 928 S.W.2d at 23. Consequently, an appellate court must affirm the judgment of the trial court unless the evidence contained in the record preponderates against the findings of fact made by the court or a rule of law has been erroneously applied. Odom, 928 S.W.2d at 23; Makoka, 885 S.W.2d at 371-72.

This standard of review applies to all issues raised during the suppression hearing. It includes the issue of whether a law enforcement officer gave the requisite Miranda warnings prior to questioning an accused who has been taken into custody. State v. Aucoin, 756 S.W.2d 705, 708-10 (Tenn. Crim. App. 1988), cert. denied, 489 U.S. 1084, 109 S.Ct. 1541, 103 L.Ed.2d 845 (1989).

In this case, the trial court obviously did not believe the defendant. The court resolved the conflicts in the testimony in favor of the state. The evidence does not preponderate against the findings of fact made by the trial court.

The defendant's reliance upon Vandergriff v. State, 409 S.W.2d 370 (Tenn. 1966), and State v. Nakdimen, 735 S.W.2d 799 (Tenn. Crim. App. 1987), is misplaced. The same cases were raised in the recent case of State v. Cooper, 912 S.W.2d 756 (Tenn. Crim. App. ), per. app. denied (Tenn. 1995). This court addressed these cases and concluded they did not reflect the state of the law. The defendant's contention "that once the process shifts from investigatory to accusatory, the constitutional rights of the Appellant come into play" is clearly not the law. As this court said in Cooper:

> [T]he appellee's argument is predicated upon a false premise. The standard enunciated in Escobedo v. Illinois, namely, a shift of the process from the investigatory state to an accusatory stage, often referred to as "focus," was abandoned many years ago in Miranda v. Arizona. Escobedo is no longer

15

the law in this jurisdiction. . . .

Today, the test for determining whether the Miranda warnings should have been given by a law enforcement officer in this state is whether there has been a "custodial interrogation."

912 S.W.2d at 766. See Stansbury v. California, 511 U.S. 318, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994). Recently, the supreme court, citing Cooper, held that the test advanced by the defendant was clearly not the applicable test. State v. Anderson, 937 S.W.2d 851, 854 (Tenn. 1996). The supreme court's decision in Anderson overruled all prior cases which "hold or indicate that the focus or progress of the investigation factor is relevant to the determination of whether a person is in custody and entitled to Miranda warnings." 937 S.W.2d at 854.

This issue is without merit.

.

## V.

The defendant contends the trial court violated the Double Jeopardy Clause of the United States Constitution by failing to "instruct the jury on alternate counts [which] resulted in cumulative punishment" and failing to "merge the sexual battery count and rape count of the indictment." The State of Tennessee contends the "defendant was properly convicted of both rape and sexual battery."

## A.

The United States Constitution grants the accused immunity from being placed in jeopardy for the same offense on more than one occasion. The Fifth Amendment provides in part that "no person shall ... be subject for the same offense to be twice put in jeopardy of life or limb. . . ." U.S. Const. amend. V. This clause is applicable to the states through the Due Process Clause embodied in the Fourteenth Amendment. Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

The Tennessee Constitution also protects an accused from being twice placed in jeopardy for the same offense. Article I, § 10 of the Tennessee Constitution provides

16

"[t]hat no person shall, for the same offence, be twice put in jeopardy of life or limb."

The purpose of the Double Jeopardy Clause and the values it protects was aptly stated in Green v. United States:

> The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

355 U.S. 184, 187-88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199, 204 (1957). In other words, the Double Jeopardy Clauses contained in the United States Constitution and Tennessee Constitution "might properly be called a rule designed to encourage repose and peace." Holt v. State, 160 Tenn. 366, 372, 24 S.W.2d 886, 887 (1930).

Both the United States Constitution and the Tennessee Constitution protect an accused against (a) a second prosecution for the same offense after the accused has been acquitted of the offense, (b) a second prosecution for the same offense after the accused has been convicted of the offense, and (c) multiple punishments for the same offense. Brown v. Ohio, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187, 194 (1977); North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 664-65 (1969); State v. Todd, 654 S.W.2d 379, 381 (Tenn. 1983); State v. Cloud, 588 S.W.2d 552, 553 (Tenn. 1979); State v. Nixon, 669 S.W.2d 679, 680-81 (Tenn. Crim. App.), per. app. denied (Tenn. 1983). However, the Double Jeopardy Clause "does not offer a guaranty to the defendant that the State will vindicate its societal interest in the enforcement of the criminal laws in one proceeding." Nixon, 669 S.W.2d at 681. Moreover, there is no bright-line test for determining when the Double Jeopardy Clause should be applied.

**B.**

The defendant cites State v. Banes, 874 S.W.2d 73 (Tenn. Crim. App. 1993), per. app. denied (Tenn. 1994), for the proposition that convictions for both sexual battery and rape violate his double jeopardy rights when resulting from one criminal episode because

17

sexual battery constitutes a lesser included offense of rape. However, this court stated in

Banes:

> Under some circumstances the offense of aggravated rape and aggravated sexual battery, though lesser included offenses, would support separate charges and separate convictions. The determination requires an analysis of the allegations of the indictment, the proof, and the elements of the offense.

Banes, 874 S.W.2d at 79-80 (citations omitted).

Multiple convictions predicated upon one episode of assaults do not necessarily violate an accused's protection against double jeopardy. State v. Phillips, 924 S.W.2d 662 (Tenn. 1996). This court has held "discrete acts can justify multiple convictions." State v. Denton, 938 S.W.2d 373, 381 (Tenn. 1996).

The primary issue to be considered when determining whether multiple convictions violate double jeopardy is legislative intent. Albernaz v. United States, 450 U.S. 333, 344, 101 S.Ct.1137, 1144-45, 67 L.Ed.2d 275, 285 (1981); Denton, 938 S.W.2d at 379; State v. Phillips, 924 S.W.2d 662 (Tenn. 1996). In determining whether the imposition of two convictions from one criminal episode is proper, the supreme court said to look to several factors:

> (1) a Blockberger analysis of the statutory offenses; (2) an analysis, guided by the principles of Duchac, of the evidence used to prove the offenses; (3) a consideration of whether there were multiple victims or discrete acts; and (4) a comparison of the purposes of the respective statutes. None of these steps is determinative; rather the results of each must be weighed and considered in relation to each other.

Denton, 938 S.W.2d at 381.

In light of the foregoing principles, this court must determine whether the imposition of two convictions for the events occurring in one criminal episode violated the Fifth Amendment's protections against double jeopardy.

**C.**

In applying the rule of Denton to the present case, it is first necessary to determine whether the offenses constitute the same offense under the Blockberger "same elements test." 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Sexual battery and rape do not constitute the same offense under the Blockberger test because each crime requires proof of one element the other does not. Sexual battery requires proof of "unlawful sexual contact with a victim by the defendant." Tenn. Code Ann. § 39-13-505(a) (1997 Supp.). Rape requires proof of "unlawful sexual penetration of a victim by the defendant or of the defendant by a victim" accompanied by "force or coercion." Tenn. Code Ann. § 39-13-503(a)(1) (1997 Supp.). Although sexual battery is a lesser grade offense of rape, rape requires proof of the additional element of penetration, which is defined differently than sexual contact. Tenn. Code Ann. § 39-13-501(6) and (7) (1997 Supp.).

More importantly, under the second prong of Denton, sexual battery and rape fail the "same evidence test" because different evidence is necessary to prove each offense. Duchac v. State, 505 S.W.2d 237 (Tenn. 1973), cert. denied, 419 U.S. 877, 95 S.Ct. 141, 42 L.Ed.2d 117 (1974); State v. Black, 524 S.W.2d 913, 919 (Tenn. 1975). Duchac requires an examination of whether the same evidence is used to prove each offense in determining whether multiple convictions violate double jeopardy. Duchac, 505 S.W.2d at 239. The evidence used to prove rape in the present case was the evidence relating to the defendant's forcible digital penetration of the victim. The evidence used to support the charge of sexual battery related to separate and distinct acts of sexual contact committed by the defendant which did not involve penetration--fondling the victim's breasts, taking his penis out and placing the victim's hand on it, and putting his hand over the victim's and making her masturbate him. Under Duchac, the evidence used to support the two charges related to two separate and distinct acts by the defendant.

Denton next requires an inquiry into whether "there were multiple victims involved" or "several discrete acts." 938 S.W.2d at 381. Factors that should be examined in determining whether an offense involves several discrete sex acts are:

(1) The nature of the act;

19

(2) The area of the victim's body invaded by the sexually assaultive behavior;

(3) The time elapsed between the discrete conduct;

(4) The accused's intent, in the sense that the lapse of time may indicate a newly formed intent to again seek sexual gratification or inflict abuse; and

(5) The cumulative punishment.

Phillips, 924 S.W.2d at 665. In the present case, the defendant had sexual contact with the victim that encompassed both fondling and penetration. The rape occurred when the defendant digitally penetrated the victim's vagina. The sexual battery was committed afterwards, when the defendant fondled the victim's breasts and put her hand on his penis. At one point, the defendant stopped touching the victim and laid on the ground because his daughter, who was in bed next to the victim, had awakened. When his daughter fell back asleep, the defendant continued his actions against the victim. Therefore, the defendant's actions constituted separate and distinct actions of sexual misconduct supporting convictions for both rape and sexual battery.

Finally, this court must determine whether both statutes at issue serve the same purpose. Although both crimes are codified as sex offenses, they fall within separate classes of felony offenses--rape is a Class B felony and sexual battery is a Class E felony. In addition, there is no presumption of alternative sentencing in rape cases. Tenn. Code Ann. § 40-35-102(6). The reason for different felony classes is so similar conduct is given similar punishment. Sentencing Commission Comments to Tenn. Code Ann. § 40-35-111. Therefore, the legislative intent behind the statutes indicates the legislature was addressing two separate "societal evils."

In summary, the offenses of rape and sexual battery do not constitute the same offense under the Blockburger analysis; the same evidence was not used to prove each crime; the offenses involved separate, discrete sex acts; and the legislature did not intend for convictions under the statutes for the two offenses to punish the same evil. Therefore, the defendant's convictions for both sexual battery and rape do not violate double jeopardy.

This issue has no merit.

20

## VI.

The defendant contends the trial court erred in failing to instruct the jury on statutory rape. He concedes that statutory rape is not a lesser included offense of rape, but argues statutory rape is a lesser grade of the offense of rape. State v. Trusty, 919 S.W.2d 305 (Tenn. 1996). He concludes by saying "the failure to give the instructions [on statutory rape] denied the jury consideration of the Appellant's theory of the case."

This court has recently held statutory rape is not a lesser grade of the offense of rape. State v. Michael Lynn Walton, Davidson County No. 01-C-01-9509-CR-00290, 1997 WL 781705 (Tenn. Crim. App., Nashville, November 12, 1997). In addition, this court has held statutory rape is not a lesser grade of the offense of rape of a child. State v. Michael Lynn Ealey, Greene County No. 03-C-01-9609-CR-00333, 1997 WL 327337 (Tenn. Crim. App., Knoxville, June 17, 1997).

This issue is without merit.

## VII.

The defendant contends the sentences imposed by the trial court were excessive. He argues the trial court committed error of prejudicial dimensions by using two enhancement factors: the victim was particularly vulnerable because of age or physical or mental disability, Tenn. Code Ann. § 40-35-114(4)(1997 Supp.); and the defendant abused a position of private trust, Tenn. Code Ann. § 40-35-114(15)(1997 Supp.), to increase the sentences within the appropriate range.

## A.

When an accused challenges the length and manner of service of a sentence, it is the duty of this court to conduct a de novo review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (1997 Supp.). This presumption is "conditioned upon the

21

affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App.), per. app. denied (Tenn. 1994); State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993). However, this court is required to give great weight to the trial court's determination of controverted facts as the trial court's determination is based upon the witnesses' demeanor and appearance when testifying.

In conducting a de novo review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancing factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103 and -210. State v. Scott, 735 S.W.2d 825, 829 (Tenn. Crim. App.), per. app. denied (Tenn. 1987).

When the accused is the appellant, the accused has the burden of establishing that the sentence imposed by the trial court was erroneous. Sentencing Commission Comments to Tenn. Code Ann. § 40-35-401; Ashby, 823 S.W.2d 169; Butler, 900 S.W.2d at 311.

**B.**

The trial court found three enhancement factors were applicable to this case. The factors used to enhance the appellant's sentences were: (a) the defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range, Tenn. Code Ann. § 40-35-114(1) (1997 Supp.); (b) the victim of the offense was particularly vulnerable because of age or physical or mental disability, Tenn. Code Ann. § 40-35-114(4) (1997 Supp.); and (c) the defendant abused a position of public or private trust, or used a special skill in a manner that significantly

22

facilitated the commission or the fulfillment of the offense, Tenn. Code Ann. § 40-35-114(15) (1997 Supp.).

**(1)**

The defendant contends the trial court erroneously applied enhancement factor (4), Tenn. Code Ann. § 40-35-114(4) (1997 Supp.). Since the legislature used age to specify the felony class and range of punishment for rape, the defendant argues it was inappropriate to use age as an enhancement factor when the victim's age was six months over the statutory punishment for rape of a child. The defendant also argues the state failed to prove the victim was particularly vulnerable due to her age. State v. Adams, 864 S.W.2d 31, 35 (Tenn. 1993).

Age may be used as an enhancement factor when it is not an essential element of the offense charged in the indictment. Tenn. Code Ann. § 40-35-114 (1997 Supp.). Further, this court has previously held that even where age is an element of the offense, as with the offense of rape of a child, this enhancement factor may be applied when the victim is particularly vulnerable due to age or disability. Adams, 864 S.W.2d at 35; State v. Williams, 768 S.W.2d 714 (Tenn. Crim. App. 1988), per. app. denied (Tenn. 1989). Particular vulnerability due to age or disability is a factual issue to be resolved by the trier of fact when the record indicates that the victim was "incapable of resisting, summoning help, or testifying against the perpetrator." Adams, 864 S.W.2d at 35. The state bears the burden of proving the particular vulnerability of the victim. Id.

In the present case, the indictment charged the defendant with rape pursuant to Tenn. Code Ann. § 39-13-501(a)(1) (1997 Supp.), which is defined as the unlawful penetration of a victim accompanied by force or coercion. Since age is not an element of rape, it may properly be considered as an enhancement factor. Tenn. Code Ann. § 40-35-114 and 39-13-503(a) (1997 Supp.). This court is of the opinion the trial court properly enhanced the defendant's sentence due to the vulnerability of the victim based upon the peculiar circumstances presented by this case.

The victim was thirteen and one-half years of age when the defendant raped her. The defendant, an exceptionally large and imposing man, took advantage of the victim in

23

the dark of night as she slept. She did not scream or cry for help because she was frightened, and she was afraid the defendant would physically harm her if she screamed or verbally sought help. The height and weight of the defendant would have scared most individuals, especially children.

The supreme court has set forth certain factors which should be considered when determining whether this enhancement factor should be applied. The factors include (a) whether the victim, due to age, was particularly unable to resist the crime or summon help; (b) whether the victim's age, thirteen (13), is entitled to additional weight; and (c) whether the victim's vulnerability increased the likelihood of her being the target of the offense. State v. Walton, ____ S.W.2d ____ (Tenn. 1997); State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997). The facts in this case satisfy each of these factors.

**(2)**

The defendant contends the trial court erroneously applied enhancement factor (15), Tenn. Code Ann. § 40-35-114(15) (1997 Supp.). The defendant contends he had no special relationship with the victim which would constitute a position of private trust. The defendant asserts the victim was a stranger in his home -- he had not met the victim or her mother before the victim came to stay at his home for a week. Therefore, the defendant argues he did not have a relationship with the victim inducing or promoting "reliability, confidence, or faith" sufficient to justify application of enhancement factor (15). State v. Kissinger, 922 S.W.2d 482 (Tenn. 1996).

In order to apply factor (15), the trial court must first find the existence of a position of public or private trust, and then determine whether there was a breach of that trust. While this enhancement factor is traditionally applied in cases where the defendant is a parent or relative of the victim, it may also be applied if the defendant is a babysitter, teacher, or coach. Kissinger, 922 S.W.2d at 488. In Kissinger, the supreme court distinguished between the application of this enhancement factor to a defendant who was merely a casual visitor to the victim's home and to a defendant who had been entrusted with the care of a victim. The court found a position of trust existed in the latter scenario,

24

but not in the former.  <u>Kissinger</u>, 922 S.W.2d at 489.

In the present case, the defendant and his wife were entrusted as the victim's caretakers while she was staying in their home.  The defendant was aware the victim would be spending a week in his home, and he accepted responsibility for her well-being during that time by consenting to the extended stay.  He violated this private trust by sexually abusing the victim.

There was no abuse of discretion by the trial court in applying enhancement factor (15).


_____
                          JOE B. JONES, PRESIDING JUDGE


CONCUR:


_____
          DAVID H. WELLES, JUDGE


_____
          JOE G. RILEY, JUDGE