# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### December 13, 2000 Session

## STATE OF TENNESSEE v. HOWARD W. WEAVER

### Appeal from the Criminal Court for Roane County
### No. 11781     E. Eugene Eblen, Judge

---

### No. E2000-00066-CCA-R3-CD
### March 1, 2001

---

The defendant appeals his convictions of two counts of aggravated sexual battery. He claims that the trial court erred (1) in denying his motion to suppress his statement given to investigators from the Department of Children's Services and sheriff's department, and (2) in failing to require the state to elect the particular offenses upon which it sought convictions. He also claims that the evidence presented at trial is insufficient to support his convictions. Upon review, we accept the state's concession of error in the failure to elect, but we are unpersuaded of merit in the defendant's suppression and sufficiency issues. We reverse the defendant's convictions and remand for a new trial.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Reversed and Remanded.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which GARY R. WADE, P.J. and NORMA MCGEE OGLE, J., joined.

Charles B. Hill, II, for the Appellant, Howard W. Weaver.

Paul G. Summers, Attorney General & Reporter; R. Stephen Jobe, Assistant Attorney General; J. Scott McCluen, District Attorney General; Wayne Henry, Assistant District Attorney General, for the Appellant, State of Tennessee.

**OPINION**

Howard W. Weaver appeals from his conviction of two counts of aggravated sexual battery of M.C. and K.C.,[1] two minor children who lived in his home. Weaver is presently serving an effective eight-year sentence in the Department of Correction for his crimes. In this direct appeal, he claims error in the admission of statements he made to the investigating authorities and in the state's failure to elect the offenses upon which it relied. He also claims that the evidence is insufficient to support his conviction. Upon review, we see no error in the admission of the defendant's statements, nor do we find any deficiency in the strength of the convicting evidence. However, we agree with both the defendant and the state that the absence of an election mandates a new trial. We therefore reverse the defendant's convictions and remand this case for a new trial.

Two of the victims in the conviction offenses, M.C. and K.C., are sisters. In 1997, they lived in the defendant's Roane County home along with their mother, their mother's female friend, and the female friend's two sons. The defendant's home was a three-bedroom apartment. The victims' mother and her friend occupied two of the three bedrooms, and the defendant and the four children occupied the third. The two boys slept in bunk beds, while M.C. and K.C. often slept with the defendant in his queen-size bed.

At trial, M.C. testified that she was born in 1986. She testified that when she was in bed with the defendant, he reached into her panties and touched her vagina. She described this as happening daily. M.C. did not describe any specific incidents of abuse. She said that the defendant had never penetrated her.

K.C. testified that she was born in 1988. She said that she sometimes slept in the defendant's bed, but that when he began touching her under her clothes in her "wrong places," she began sleeping in the closet. Like her sister, K.C. did not describe any particular occurrence of sexual abuse.

Another young girl, D.H., testified that she was M.C.'s friend and had spent the night in the defendant's home. She said that the defendant touched her on her vagina and her "butt." She said she was not sure how many times this happened. She also described an incident in which the defendant "stuck his finger up my rear end."

A fourth young girl, H.C., testified that she was a friend of M.C. and spent the night in the defendant's home on occasion. She testified that on more than one occasion, the defendant touched her private parts underneath her panties.

Paul Phillips, who was a child protective services worker and investigator with the Department of Children's Services in October 1997, testified that he and Linda Booth, an

---

[1]It is the policy of this court to refer to minor victims of sex crimes by initials only.

investigator with the Roane County Sheriff's Department, went to the defendant's home on October 11, 1997 after receiving information that the defendant was sexually abusing young girls. Phillips talked to the defendant, while Booth talked to D.H., although Booth was present during part of the conversation between Phillips and the defendant. The defendant told Phillips that he massaged M.C. and K.C. with their underwear off. He said he had touched M.C.'s vaginal area and that he might have accidentally penetrated her vagina digitally more than once. He called M.C. a "sexy young thing."

Linda Booth testified that she overheard the defendant tell Phillips that he had massaged M.C., touched her pubic hair, and might have put his finger inside her accidentally. Booth also overheard the defendant say he had massaged M.C.'s buttocks.

The defendant testified that he did not sexually abuse any of the four girls who had accused him. He denied making the statements that Phillips and Booth attributed to him, claiming Phillips and Booth were part of a conspiracy against him. He claimed that several valuable items of personal property were taken from his home and pawned, and several checks were taken from his checkbook. He attributed this activity to the victims' mother and her friend. He claimed that the allegations of abuse were a means for the victims' mother and her friend to prevent him from prosecuting them for the thefts.

Two of the defendant's former neighbors testified that they had seen the defendant with M.C. and K.C., and the girls seemed happy and appeared to have a good relationship with the defendant.

At the close of the state's proof, the trial court entered a judgment of acquittal on the child rape charges as to M.C. and K.C. Thus, the charges submitted to the jury were child rape of D.H. and aggravated sexual battery of M.C., K.C. and H.C. The jury found the defendant not guilty of any offenses relative to D.H. and H.C. It found the defendant guilty of aggravated sexual battery of M.C. and K.C.

The defendant then brought this appeal.

# I

The defendant's first complaint is that the trial court erred in denying his motion to suppress evidence of the conversation with Paul Phillips wherein he admitted inappropriate physical contact with M.C. and K.C. The defendant complains that because he was not given *Miranda* warnings prior to making the statements, this evidence should have been excluded.

The undisputed evidence at the suppression hearing and at trial[2] demonstrated that Paul Phillips, then a social worker with Child and Family Services, and Linda Booth, an investigator with the Roane County Sheriff's Department, went together to the defendant's home in the course of their respective investigations. When they arrived, the defendant was not home. When the defendant returned, Phillips talked to the defendant outside the home. Booth was elsewhere speaking with one or more other witnesses, although she was present during part of the conversation between Phillips and the defendant. Phillips never advised the defendant of his *Miranda* rights.

Both the state and the defendant agree that Booth advised the defendant of his rights, but the evidence conflicts about when this occurred. Booth testified that she read the defendant his rights before he made incriminatory statements in her presence, while the defendant testified that Booth read him his rights after his conversation with Phillips was concluded and Booth was about to depart.

In passing on the suppression issue, the trial court ruled that Paul Phillips was under no obligation to give the defendant *Miranda* warnings. The trial court found that any statements made in Booth's presence were made after the *Miranda* warnings were given. Accordingly, the court denied the motion to suppress.

A trial court's determination at a suppression hearing is presumptively correct on appeal, *State v. Stephenson*, 878 S.W.2d 530, 544 (Tenn. 1994), and the findings are binding upon this court unless the evidence contained in the record preponderates against them. *State v. Binette*, 33 S.W.3d 215, 217 (Tenn. 2000); *State v. Odom*, 928 S.W.2d 18, 22 (Tenn. 1996); *Stephenson*, 878 S.W.2d at 544; *State v. Aucoin*, 756 S.W.2d 705, 710 (Tenn. Crim. App. 1988).

Under this standard, matters regarding the credibility of witnesses, the weight and value to be afforded the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial court as the trier of fact. *Odom*, 928 S.W.2d at 23. On appeal, the defendant has the burden of showing that the evidence preponderates against the trial court's determination. *State v. Buck*, 670 S.W.2d 600, 610 (Tenn. 1984).

In determining whether *Miranda* warnings are required, the court must look to whether the defendant was "in custody" at the time he made the incriminating statement. *State v. Anderson*, 937 S.W.2d 851, 853 (Tenn. 1996). Custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612 (1966). A person is "in custody" within the meaning of *Miranda* if there has been "a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125, 103 S. Ct. 3517, 3520 (1983) (*quoting Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S. Ct. 711, 714 (1977)). An assessment whether the defendant

---

[2] Upon review of a trial court's ruling on a suppression motion, the appellate court may consider the evidence presented both at the suppression hearing and at trial. *State v. Henning*, 975 S.W.2d 290, 299 (Tenn. 1999).

was "in custody" for *Miranda* purposes is made based upon the totality of the circumstances. *Anderson*, 937 S.W.2d at 855.

The situation presented by the defendant in the case at bar is not a novel one. In the past, we have been called upon to consider similar factual circumstances.

In *State v. Cooper*, 912 S.W.2d 756 (Tenn. Crim. App. 1995), the defendant sought suppression of his statement to an investigator with the district attorney's office. The investigator went to the defendant's home to talk to him about allegations of child sexual abuse, but the defendant was not home. *Id.* at 758. The investigator left a note for the defendant to call him. *Id.* The defendant called the investigator and agreed to come to the district attorney's office the next day. *Id.* When the defendant arrived for the interview, the investigator advised the defendant of the allegation against him and that the matter might be referred to the grand jury. *Id.* The defendant was also informed that he was not under arrest and would be able to leave without regard to contents of any statement he chose to give, although he was not given the *Miranda* warnings. *Id.* The defendant then proceeded to give an incriminatory statement. *Id.* On these facts, we held that the defendant clearly was not "in custody" so as to mandate the *Miranda* admonitions. *Id.* at 766. We found it significant that the defendant arrived for the interview of his own accord, had no obligation to talk to the investigator, was free to leave, and was actually permitted to leave after the interview. *Id.* We also observed that neither the investigator's recitation of the evidence against the defendant nor the fact that the goal was to obtain an incriminatory statement from the defendant converted the interview to a custodial one. *Id.* Thus, the evidence was admissible.

Similarly, in *State v. Davis*, 735 S.W.2d 854 (Tenn. Crim. App. 1987), officers of the sheriff's department went to a location where they expected to find the defendant in order to interview him about allegations of child sexual abuse. *Id.* at 855. The defendant was not there, so the sheriff called him and asked him to appear for an interview. *Id.* A few days later, the defendant called and then appeared at the sheriff's office, where he gave a statement which he later sought to have suppressed. *Id.* It was undisputed that the defendant was not given *Miranda* warnings prior to the statement, and he was told that he was not being charged, could leave at will, and had no obligation to provide a statement. *Id.* We held that the trial court erred in suppressing the statement. *Id.* at 856. We observed that the defendant was not in custody, was not coerced, and was aware he was free to go. *Id.*

Yet another analogous case is *State v. Timothy Blackburn*, No. 2 (Tenn. Crim. App., Jackson, Apr. 10, 1991), in which the defendant sought suppression of a statement he gave to an employee of the Department of Human Services (DHS). On the DHS employee's request, the defendant agreed to go to the DHS office, where he met with the DHS employee and an investigator from the district attorney's office. *Id.*, slip op. at 2-3. The defendant was not given the *Miranda* warnings, although he was told that he was under no obligation to give a statement and was free to leave at any time. *Id.*, slip op. at 3. We held that the trial court erred in suppressing the statement because the defendant was not in custody during the interview. *Id.*, slip op. at 4.

Like the defendants in *Cooper*, *Davis* and *Timothy Blackburn*, the defendant in the case at bar presents an unavailing case for suppression of his statement. The defendant in this case was interviewed at his own residence. He voluntarily accompanied Phillips outside the home to talk to him. The defendant was not placed under arrest or physically restrained at any point, and he was not taken into custody at the conclusion of the interview. The defendant was advised of his *Miranda* rights during the interview, and he continued to speak with Phillips and Booth.[3] Given the totality of the circumstances, we are compelled to conclude that the defendant was not "in custody" such that *Miranda* warnings were a necessity.

We therefore conclude that the trial court properly denied the motion to suppress.

**II**

In his next issue, the defendant argues, and the state concedes, that reversible error occurred when the trial court failed to require the state to make an election of offenses at trial.

The defendant was charged with one count as to each victim, but the proof demonstrated that there were multiple acts of sexual misconduct directed toward M.C. and K.C.[4] In very general terms, both M.C. and K.C. testified that the defendant touched them in their genital areas on numerous occasions. The state did not elicit proof of particular events from the victims. The state did not present evidence via the victims that there were any identifying characteristics of the incidents, such as particular types of touching, proximity to significant events, dates or other identifying features which might serve to isolate one particular occurrence.[5] The state made no election of the particular event upon which it was relying as to each victim in seeking conviction of the defendant.

Tennessee law provides that if the evidence at trial suggests that the defendant has committed more offenses then the number charged, the court has the obligation to require the state to elect the offense(s) for which it seeks conviction. *State v. Shelton*, 851 S.W.2d 134, 137 (Tenn. 1993). The accused has a fundamental constitutional right to the election, *id.*, and the trial court's failure to require it is plain error. *See, e.g., State v. Walton*, 958 S.W.2d 724, 727 (Tenn. 1997).

---

[3] The defendant has failed to carry his burden of demonstrating that the evidence preponderates against this finding of the trial court. *See Buck*, 670 S.W.2d at 610. We therefore defer, as we must, to the trial court's resolution of conflicts in the evidence. *See Odom*, 928 S.W.2d at 23.

[4] Because the jury acquitted the defendant of the charges relative to D.H. and H.C., we need not address them in consideration of this issue.

[5] Although neither M.C. nor K.C. testified at trial that the defendant touched them on their buttocks, the state presented evidence through witness Paul Phillips that the defendant admitted both touching M.C.'s genital area and massaging her buttocks. There is somewhat ambiguous testimony from Phillips that the defendant admitted touching K.C. on her buttocks as well as her genital area. The possibility that two different types of touching may have occurred only amplifies the necessity of proper election.

We agree with the parties that the state's failure to elect the particular incidents upon which it sought conviction was reversible error.[6] *See State v. Brown*, 992 S.W.2d 389 (Tenn. 1999)*; State v. Walton*, 958 S.W.2d 724 (Tenn. 1997)*; State v. Tidwell*, 922 S.W.2d 497 (Tenn. 1996)*.* The fact that the proof was general does not relieve the state of the obligation of election. *See State v. Clyde Hambrick, Jr.*, No. E1998-00893-CCA-R3-CD, slip op. at 10-12 (Tenn. Crim. App., Knoxville, June 27, 2000) (election of first event of every month inadequate where victim failed to describe numerous incidents of sexual abuse with particularity); *State v. Michael Thomason*, No. 02C01-9903-CC-00086, slip op. at 18-19 (Tenn. Crim. App., Jackson, Mar. 7, 2000) (absence of election was error where one of the victims testified that defendant had touched her inappropriately "so many times" but failed to describe any specific incident). The state should have elicited proof from which it could make a meaningful election, and the trial court should have assured unanimity by requiring the election. *See Brown*, 992 S.W.2d at 392-93 (state should have elicited particularizing proof).

On retrial of the defendant, if the state again presents evidence of more offenses than are encompassed by the charge, it must elicit testimony that will allow the jury to determine whether a specific act corresponds with each count. *See id.* Likewise, on retrial the state must properly elect the same number of offenses per victim as there are charges relative to each victim. *See Walton,* 958 S.W.2d at 727. The trial court must, in turn, ensure that an election is made as to each count. *See id.*

**III**

Finally, the defendant claims that the evidence is insufficient to sustain his convictions. Although we have already determined that reversible error occurred, we must nevertheless address this issue because if it has merit, the remedy would be dismissal rather than a remand for a new trial.

The standard for review of sufficiency claims is a familiar one. When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e)*; Jackson v. Virginia*, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791-92 (1979); *State v. Duncan*, 698

---

[6]It occurs to us that in some situations similar to the cases on trial, the failure to elect may result in a harmless error. For instance, in a trial upon a single count of aggravated sexual battery, should a young victim of oft-repeated sexual batteries be unable to describe the offenses except in a conclusory and general way, and the evidence shows that the victim had not the means or the wherewithal to describe the events with particularity, and finally the defendant denied any and all offenses, the jury trying such a case would have no basis on which to find that the defendant committed some of the offenses but not others. Such an hypothesis points toward an all-or-nothing option for the jury. However, such is not the case now before us. The victims testified to genital touching, but another witness testified that the defendant admitted to massaging the victims' buttocks. *See* n. 5; see also Tenn. Code Ann. § 39-13-501(2) (1997) (definition of "intimate parts" includes "buttocks"); Tenn. Code Ann. § 39-13-501(6) (1997); Tenn. Code Ann. §39-13-504(a)(4) (1997). We believe that the use of the evidence of different types of touching defeats any claim that the error of failing to elect offenses was harmless.

S.W.2d 63, 67 (Tenn. 1985). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990), *overruled on other grounds by State v. Hooper,* 29 S.W.3d 1 (Tenn. 2000). On appeal, the defendant no longer enjoys the presumption of innocence and therefore has the burden of demonstrating that the evidence is insufficient to support the conviction. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

In determining the sufficiency of the evidence, this court should not reweigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this court substitute its inferences for those drawn by the trier of fact from the evidence. *Liakas v. State*, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956); *Farmer v. State*, 574 S.W.2d 49, 51 (Tenn. Crim. App. 1978). On the contrary, this court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Cabbage*, 571 S.W.2d at 835.

The defendant was convicted of aggravated sexual battery of M.C. and K.C. As relevant to this case, that crime is "unlawful sexual contact with a victim by the defendant . . . [where] . . . [t]he victim is less than thirteen (13) years of age." Tenn. Code Ann. § 39-13-504(a)(4) (1997). "'Sexual contact' includes the intentional touching of the victim's . . . intimate parts . . . if that intentional touching can be construed as being for the purpose of sexual arousal or gratification." Tenn. Code Ann. § 39-13-501(6) (1997). "'Intimate parts' includes the primary genital area, groin, inner thigh, buttock or breast of a human being." Tenn. Code Ann. § 39-13-501(2) (1997).

With respect to the aggravated sexual battery conviction related to M.C., the defendant claims there is no evidence of a specific event. The defendant argues that the proof is therefore insufficient to sustain his conviction. Unfortunately for the defendant, our supreme court has explicitly rejected such an argument. *Brown*, 992 S.W.2d at 392 ("[T]he remedy for the State's failure to satisfy the election requirement is a new trial and not a dismissal due to insufficient evidence.").

Moreover, the proof of the defendant's crime against M.C. was sufficient. In the light most favorable to the state, the defendant touched M.C.'s "intimate parts." Circumstantially, one may infer that the touching was intentional and that it was for the purpose of the defendant's sexual arousal or gratification. M.C. asked the defendant to stop, but he continued. The defendant told the victim that if she told anyone she would get in trouble. The defendant told Paul Phillips that M.C. was a "sexy young thing." Review of the proof in the light most favorable to the state reveals sufficient proof beyond a reasonable doubt of the defendant's guilt of aggravated sexual battery of M.C.

With respect to the aggravated sexual battery conviction relative to K.C., the defendant argues that "there is no credible evidence" supporting this conviction. He attacks the very general nature of K.C.'s testimony, including the fact that K.C. said the defendant touched her on her "bottom" but did not clarify what she meant. He attacks Paul Phillips' testimony that the defendant admitted massaging K.C.'s buttocks and claims that K.C. did not testify to that effect. The defendant also assails K.C.'s failure to identify when the crime occurred.

We begin by reaffirming that we must consider the evidence in the light most favorable to the state and that we are not free to reassess witness credibility. With those principles in mind, we hold that the evidence is sufficient to sustain the defendant's conviction of aggravated sexual battery of K.C. According to Paul Phillips, the defendant admitted massaging K.C. with her underwear partly down and off. K.C. testified that the defendant touched her "wrong places" below her clothing. She testified that this occurred when she was eight or nine, and it is readily inferred from her testimony that it took place during the time she was living in the defendant's home. Other evidence at trial established that the time K.C. and M.C. lived with the defendant coincided with the time frame of the indictments. Thus, there is sufficient evidence of the defendant's crime against K.C.

In conclusion, we are compelled to address the reversible error which occurred when the trial court failed to require the state to elect the particular offenses upon which the state sought conviction of the defendant as to each count of the indictment. We therefore reverse the defendant's two convictions and remand for a new trial.

_____
JAMES CURWOOD WITT, JR., JUDGE